# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 JAN 25  AM 11: 43

CLERK _____
SO. DIST. OF GA.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## DUBLIN DIVISION

|   |   |   |
|---|---|---|
| Teri Lynn Hinkle | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | **Civil Action File No:** |
| **vs** | ) | **3:11-cv-00052-DHB-WLB** |
| | ) | |
| ARS NATIONAL SERVICES, INC. | ) | |
| **Defendant** | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM AND AFFIDAVIT  IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

The Plaintiff , Teri Lynn Hinkle asks the court to deny Defendant's motion for summary judgment and states as follows:

## INTRODUCTION

1. Plaintiff is Teri Lynn Hinkle, hereinafter Hinkle; Defendant is ARS NATIONAL SERVICES, INC., hereinafter ARS.

2. On June 15, 2012 Hinkle sued ARS for violations of the Fair Credit Reporting Act (hereinafter FCRA) in this Court.

3. On July 26, 2012 ARS filed a Motion to Dismiss. (*See*  Dkt. #7)

4. On November 16, 2012 ARS filed a second Motion to Dismiss. (*See*  Dkt. #21)

5. On January 7, 2013 the Honorable Judge of this Court ruled that Defendant's motions to dismiss (Dkt.#'s 7 & 21) were to be converted to a Motion for Summary Judgment. (*See.* Dkt. 26, pg 8, ¶2).

6. Summary judgment is improper in this case because there are genuine issues of material fact on each element of Plaintiff's cause of action for violations of the FCRA: no permissible purpose to obtain Plaintiff's credit report.

## STATEMENT OF FACTS

7. In order to comport with Local rule 56.1 and F.R.C.P. 56 *et al*, Hinkle states as follows:

   a. ARS does not argue that the complaint was filed against them.

   b. There is no verified evidence in any form that has been entered into the court record showing Hinkle had any legitimate "account" or "debt" with any entity.

   c. ARS does not argue that they obtained the credit report of Hinkle; there is no verified evidence in any form that has been entered into the court record showing ARS was "retained" to collect a debt from Hinkle; There is no verified evidence in any form that has been entered into the Court record showing ARS did not obtain Hinkle's social security number by fraud or misrepresentation.

   d. ARS does not dispute that: Hinkle's contention that professional judgment was not exercised on the part of ARS before collection efforts commenced; ARS made no inquiry with Hinkle and has shown no effort or due diligence having been exercised in order to have a reasonable belief the alleged "creditor's" representation was valid and any debt was owed by Hinkle.

e. There are no documents purporting to evidence an alleged "account" or "debt" owed to ARS or any documentation showing the actual existence of any alleged "account" from any other entity alleged to be in the chain of ownership.

f. Other than a purely "hearsay" statement by a third party attorney in a letter sent to Hinkle on June 2, 2011 by Salvo Law Firm there is no evidence in any form of any "account" of Teri Lynn Hinkle existing that would allow any permissible purpose for ARS to obtain the credit report of plaintiff under the FCRA.

g. The Salvo letter is not admissible fact evidence.[1]

h. There is no verified evidence in any form that has been entered into the Court record showing the account numbers, amounts alleged to be due, date of origination of the alleged "account", current status, or dates and terms of referral or transfer of ownership of the alleged "account".

8. In ARS's Brief attached to its first Motion to Dismiss, (*See* Dkt.#7, ¶1, page 7) they state in their argument in support of their alleged "permissible purpose":

a. "In the event a collection agency is **retained** by a creditor to collect a debt owed by a consumer, then that collection agency would have a "permissible purpose for obtaining a consumer report in conjunction with its collection activities, so long as they relate to a **transaction** that the consumer **initiated with the creditor**."

9. ARS has failed to establish evidence on the record before the court to show or prove they were in fact "**retained**" to collect an "alleged debt" or that an "alleged debt" was "**turned over to them**" as claimed by Cindy D. Salvo in her letter sent to Plaintiff on June 2, 2011. (*See* Defendants Ex.A, Dkt.#21) Mere conclusory statements do not constitute fact evidence.

---

[1] *Deutsche Bank National Trust v Constance Lawrence Mitchell*, Sup.Ct. of NJ, Appellate Division Dkt. #A-4925-09T3, August 9, 2011 "Attorneys in particular should not certify to 'facts within the primary knowledge of their clients.'"

*See Leigh v Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)[2] and *Ellis v England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005)[3]. See also *Bald Mountain Park Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)[4]

10. ARS has failed to establish verified fact evidence before the court or to Plaintiff to show or prove there was ever any **"credit transaction"** involving Plaintiff for which they could claim a permissible purpose to obtain her credit report.

11. According to the web site of Lemberg & Associates in Connecticut[5] specializing in consumer law matters:

    a. "ARS National Services is a debt collection agency headquartered in Escondido, California. They employ over 650 people in five offices... The company has been in business since 1992, and claims to provide collection services for some of the biggest financial firms in the country. However their website **does not include a solicitation for business, no information for businesses that may want to engage them to do collections, and no contact information.**"

    b. "It seems that ARS National Services purchases very old debt from multiple other debt collection agencies – what's called a second or third tier collection agency. The debts they are attempting to collect on are often long past the statute of limitations, and are missing a great deal of the original information. Since debt buyers purchase the accounts for fractions of pennies on the dollar of their face amount, their aim is often to collect as much as possible from whomever they can convince to pay. Since

---

[2] "This court has consistently held that conclusory allegations without supporting facts have no probative value."
[3] "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"
[4] "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat a summary judgment."
[5] http://www.stopcollector.com/agency/ARS-National-Services.php

ARS National Services offers an "aggressive performance bonus" policy to account representatives, the debt collectors for the company are highly motivated, which may cause them to brush up against the line of the Fair Debt Collection Practices Act or the Fair Credit Reporting Act."

    c. "In fact, a search of the federal dockets turns up over 150 lawsuits filed against ARS National Services Inc. since 2006, all of them for alleged violations of the Fair Debt Collection Practices Act or the Fair Credit Reporting Act."

12. There is no verified evidence in any form that has been entered into the Court record showing ARS was "retained" to collect from Hinkle.

13. There is no verified evidence in any form that has been entered into the court record showing ARS had any authenticated alleged account "turned over" to them which would obligate Hinkle to pay them anything or would substantiate a claim of a "credit transaction" with her.

14. In a telephone conversation which took place in August of 2012, to the best of Hinkle's recollection, Dan Montenaro, ARS' self-identified General Counsel, agreed to provide specific evidence of any legitimate "credit transaction", "alleged debt" or "contractual obligation" which would afford ARS permissible purpose to obtain her credit report in May of 2010. Mr. Montenaro further agreed to provide the agreed upon documents within the week, in exchange for which Hinkle agreed to dismiss the case if the documents proved authentic and legitimate and could establish a true contractual obligation with her.

15. Hinkle specified explicitly that an affiant who is an employee of ARS could not attest to the books and records of some other company by which he is not employed and he could have no first hand fact knowledge of another company's books and records. Therefore an affidavit

from an ARS employee could not establish the existence of a permissible purpose or "reasonable belief" there was ever any legitimate credit transaction involving Hinkle.

16. Instead of providing the agreed to documents, Mr. Montenaro informed local counsel Jonathan K. Aust that Hinkle had agreed to accept an affidavit from an ARS employee. Hinkle informed Mr. Aust that this was in fact not true, that she would not accept such as first hand fact evidence of a legitimate credit transaction, alleged account, permissible purpose or reason to believe. Mr. Montenaro, to date has not provided the documents he agreed to send, nor has he provided any other type of authentication or proof of a legitimate contractual obligation involving Hinkle.

17. In discovery requests propounded on ARS on September 9, 2012, Hinkle requested such documents as Mr. Montenaro had agreed to provide. To date no discovery requests have been answered even though in the Court's Order (*See* Dkt. #24, pg3,¶2 )[6] Hinkle's outstanding discovery requests should have been answered by January 17, 2013, however Hinkle has been advised that local counsel has been out ill for most of the ten days and is not at this time asking the Court to compel the discovery answers.

18. In ARS's reply brief in support of its second motion to dismiss pursuant to F.R.C.P. 12(b)(6) they state as follows:

    a. Plaintiff did not dispute the letter from The Salvo Law Firm, P.C. attached to Defendant's Second Motion to Dismiss. In this context, the word "undisputed" means "the authenticity of the document is not challenged." Plaintiff quotes the letter but at no point does she challenge its authenticity.

---

[6] "Finally, should the case proceed after the presiding District Judge rules on Defendant's motions to dismiss, Defendant should respond to Plaintiff's outstanding discovery requests within ten (10) days of that ruling."

19. Hinkle does not dispute that the letter from The Salvo Law Firm, P.C. was an authentic letter sent by them but has repeatedly disputed its contents. The letter contains nothing more than hearsay claims that ARS was "**retained**" to collect an "**alleged debt**" and that one had been "**turned over to them**". Mere alleged, conclusory and hearsay statements are not enough to establish a "**reason to believe**" as a matter of law. *See Miller v Wolpoff & Abramson*[7]

### STANDARD OF REVIEW

20. Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. See Fed. R. Civ. P. 56(c) ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

21. A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *See Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53. ). "Rule 56 mandates the entry of summary judgment, **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Riggs v. Anthony Auto Sales*, 32 F.

---

[7] Miller v Abramson, LLP, 2d Cir., No. 02-7017, Feb. 25,2003 Defendants in the case indicate they reviewed no more than "*very limited information*" before collection action such as; "*Mr. Miller's full name, social security number, current address, telephone number and the Lord & Taylor account number, the amount of the debt and a notation that Mr. Miller was an attorney*". The Court held that the "*information reviewed would not enable a determination of whether Mr. Miller was in bankruptcy, whether information in the record was inconsistent or incomplete, whether Miller was or was not obligated to pay the debt, or whether Miller was the correct debtor.*"...... "*the information supplied was too insufficient to support the conclusion as a "matter of law"....* Judge Sotomayor stated; "*On this undeveloped record, however, it suffices for us to hold that merely being told by a client that a debt is overdue is not enough."*

Supp. 2d 405 (1998 Westlaw 663346) (U.S.D.C. W.D. La. 1998); *Simpson v. Anthony Auto Sales*, 32 F. Supp. 2d 407 (1998 Westlaw 663350) (U.S.D.C. W.D. La. 1998). Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of its claim. Rather, defendant must demonstrate an absence of genuine factual dispute. *See Celotex Corp.*, 477 U.S., 106 S. Ct. at 2555. Only if defendant meets its burden is plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

22. In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The FCRA, like the other portions of the Consumer Credit Protection Act of 1968, is to be liberally construed. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) (Cal.). It's provisions are to be construed in favor of recovery by the consumer and against the credit reporting agency or user of credit information.

23. Hinkle must prove the following essential elements to sustain a claim for damages brought from violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 et seq. against defendant. ARS obtained Hinkle's credit report without permissible purpose. Because there is a material fact issue on the element of: ARS obtained Hinkle's credit report without permissible purpose, ARS is not entitled to summary judgment in this case.

24. For the Defendant to successfully argue for summary judgment they must show that there are no material fact issues as to any elements of the Plaintiff's cause of action where the only element is whether ARS had a permissible purpose to obtain Hinkle's credit report.

25. ARS must therefore prove through evidence before the Court rather than conclusory statements or speculation that they had an authentic permissible purpose to obtain Hinkle's credit report.

26. The only evidence offered by ARS is a letter from a third party who could have no first hand fact knowledge alleging that an alleged creditor "**retained**" them and that an alleged "**account**" was "**turned over to them**".  There is no documentation on the record whatsoever to show that had occurred.

27. There is not one document on the record submitted by ARS as **verified evidence** to show the existence of any alleged "account" indicating what type of account it is, who the alleged original creditor is, its origination date, any amounts that may be owed, any contract, or any identifying information regarding the alleged account. The letter does nothing more than refer to alleged facts not in evidence and refers to events regarding chain of ownership of the alleged "account" where there is no verified evidence of said alleged facts or events before the Court.

28. The statements in the letter are nothing more than hearsay, are not supported by any verified documentation whatsoever, are conclusory without question and cannot support a motion for summary judgment, (*See Celotex Corp.* 477 U.S. at 327, 106 S. Ct. at 2555),  and should not be considered by the Court.

29. ARS has shown nothing before the Court to evidence that they made even a minimal effort to authenticate the alleged account purported to belong to Hinkle before taking action which could have damaged Hinkle's credit score, adversely affect her ability to obtain credit or complete other credit related business transactions.

## SUMMARY JUDGMENT EVIDENCE

30. In support of her response, Hinkle includes the following evidence in the attached appendix:

    a.   Affidavit – The affidavit of Teri Lynn Hinkle establishes the fact that there is no evidence before the court that there is an account of Teri Lynn Hinkle in existence or that ARS is the owner of the account, or was referred the account and would have permissible purpose to obtain Hinkle's credit report. Teri Lynn Hinkle never gave ARS permission to obtain her credit report.

## ARGUEMENT

31. ARS claims that being a debt collection agency, it "has permissible purpose" to obtain a copy of the credit report as a matter of law by reason of 15 U.S.C. § 1681b(3)(A):

    **a.**   **any consumer reporting agency** may furnish a consumer report under the following circumstances and no other: To a person which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, **or review or collection of an account of, the consumer**;...(emphasis added).

32. 15 U.S.C. § 1681b(a)(3)(A) refers to the **consumer reporting agency and its reason to believe** the person making the request for the consumer report "*intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer.*" 15 U.S.C. § 1681b(a)(3)(A) does not refer to a person claiming to have a permissible purpose when in truth it is not authorized to collect an alleged account on behalf of the actual creditor. It does not refer to a third party with whom there has never been any extension of credit, contractual obligation and or agreement with the

consumer. It does not refer to any third party which has provided any factual claim to having

been "retained" by the actual creditor who may or may not have been involved with a "credit

transaction" with the consumer.

33. In the Ninth Circuit's decision in *Pintos v Pacific Creditors Association*, No. 04-17485

(April 30, 2009), the Court held that debt collection does **not necessarily constitute a**

**permissible purpose under the FCRA** to obtain a consumer's credit report from one of the

major credit bureaus.

34. Further, the law is very clear in that "(I)n the absence of statutory definition, a statutory term

will be accorded its ordinary meaning." *Romine v. Diversified Collection Services, Inc.*, 155

F.3d 1142 (9th Cir. 1998); *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 833 (9th

Cir. 1996). One must look to the clear language and plain words as a presumption exists that

the Congress intended the plain language to apply in light of the purpose of the statute.

*Louisiana Credit Union League v. U.S.*, 693 F.2d 525 (5th Cir. 1982) (La.); *Perrin v. U.S.*,

100 S. Ct. 311, 444 U.S. 37 (1979); *Clardy v. U.S.*, 760 F.2d 590 (5th Cir. 1985); *State of*

*Louisiana, ex rel Guste v. U.S.*, 656 F. Supp. 1310 (U.S.D.C. W.D. La. 1986), affirmed, 832

F.2d 935 (5th Cir.).

35. In cases that involve a party attempting to recover on an account owed to some other party,

"proof of an assignment of the account is essential to a recovery." Walker, 208 S.W.3d at

298. The party must show clearly through a valid assignment it is the rightful owner of the

account at issue. In other words, every link in the chain between the party to which the debt

was originally owed and the party trying to collect the alleged debt must be proven by

competent evidence in order to demonstrate standing. Walker, 208 S. W.3d at 298.

36. ARS has not asserted it was "assigned" but rather "retained" by the alleged original creditor. Nonetheless ARS has failed to show it's claimed "retention" or any other justification for the invasion of Hinkle's privacy.

37. There were several other debt buyer/collector firms[8] attempting to collect the same alleged debt from Hinkle after having obtained unsubstantiated information from a Junk Debt Buyer more than a year prior to ARS having obtained her credit report and subsequently claiming to have been "retained" by the alleged **original creditor**. When Hinkle demanded ARS provide contractual proof of the alleged contract with Capital One, Mr. Montenaro, after making the commitment to provide her with it within the week, failed to so do.

38. According the GAO report of 2009 large credit issuers typically use internal collection department operations until the account is more than 180 days delinquent at which time it is charged off when they may choose to place the account with "a" third-party collection agency and when that collection effort fails the account is sold, usually in a portfolio of many other accounts.  This could of course explain why so many other agencies were attempting to collect on the same alleged account long before ARS entered the scene.

39. ARS has submitted the letter from Salvo Law Firm as proof of their having permissible purpose in which they claim to have been **"retained"** by Capital One[9] to collect an alleged credit card debt. (Dkt. #21-2, pg 3, ¶4) It appears at this time the statement is blatantly false and ARS had full knowledge that it was false. The Supreme Court has described "false statements made with [a] high degree of awareness of their probable falsity" to be *"**actual***

---

[8] Hinkle v NCO Fin. Svs., Inc., (3:11-cv-059 S.D. Ga., June 16, 2011); Hinkle v Northland Group, (3:11-cv-084 S.D. Ga., Sept 7, 2011); Plaza Assocs., 3:11-cv-100 S.D. Ga., (Nov. 3, 2011)

[9] "In sum, ARS had a permissible purpose in requesting a copy of your credit report when it was retained by Capital One to pursue your delinquent credit card account. We hope this explanation has satisfied you."

*malice*", *Garrison v State of Louisiana*, 379 U.S. 64, 74, 85 S. Ct. 209, 216, 13 L. Ed.2d 125

(1964). In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,335 n.6, 94 S. Ct. 2997, 3004 n.6, 41

L.Ed.2d 789 (1974), the Supreme Court reiterated that "subjective awareness of probable

falsity" constitutes "actual malice". Such a false statement constitutes a further violation of

the FCRA, 15 U.S.C. § 1681h(e) which prohibits false information furnished with malice or

willful intent to injure the consumer.

40. If a consumer proves malice or willful intent to injure then injury to consumer is presumed

and damages are presumed. *Rasor v. Retail Credit Co.*, 87 Wash. 2d 516, 554 P.2d 1041.

41. ARS was fully aware that instituting a "hard pull" of Hinkle's consumer credit report would

impact her credit score and could by extension impact her ability to conduct credit

transactions and other business activities and that it could have instituted a "soft pull" which

would have no adverse impact. By making the decision to willfully damage Hinkle by

furnishing unsubstantiated information to the Credit Reporting Agency as justification for the

"hard pull", ARS has violated the FCRA 15 U.S.C. § 1681h(e). In addition any person who

knowingly obtains a credit report under false pretenses shall be fined $2,000.00, imprisoned

(up to 2 years) or both under 15 U.S.C § 1681q.  (Referring to Title 18 U.S.C. 1030 section

4, *Zamora v Valley Federal Savings & Loan Association of Grand Junction* 811 F.2nd 1368,

55 USLW 2469, No. 86-1316 Feb. 17, 1987)[10] Accordingly, if a user requests information

for a purpose not permitted by Sec. 1681b while representing to the reporting agency that the

report will be used for a permissible purpose, the user may be subject to civil liability for

---

[10] 15 U.S.C. § 1681q imposes criminal liability upon any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses. 15 U.S.C. § 1681n provides a private cause of action against any person who willfully fails to comply with any "requirement" of the FCRA. Violation of Sec. 1681q provides a basis for civil suit pursuant to Sec. 1681n. Hansen v. Morgan, 582 F.2d at 1219; Kennedy v. Border City Savings & Loan Ass'n, 747 F.2d 693, 697 (10th Cir. 1980).

obtaining information under false pretenses.

42. What does "willful" really mean?  "Willful" means "not accidental," or "on purpose", hence, knowingly, intentionally, and carelessly done in violation of law, and in disregard of the safety of the public." *Coleman v. White*, 95 S.W.2d 1018, 1019 (Ct. Civ. App. Beaumont 1936); *Bowers v. Bingham*, 159 S.W.2d 576, 577 (Ct. Civ. App. Amarillo 1942); 68 C.J.S. sec.3, p.268.  "Willful" also means "not accidental." *Southern Fleet Leasing Corp. v. Brown*, 257 So.2d 819 (La. App. 1 Cir. 1972).  In addition "Willful" means "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." *Grant v. Natchitoches Manor Nursing Home*, 696 So.2d 73, 76 (La. App. 3 Cir. 1997), W.D., 701 So.2d 1330 (La. 1997); *Parfait v. Gulf Island Fabrication, Inc.*, 733 So.2d 11 (La. App. 1 Cir. 1999); *Friendly Finance Service, Mid City, Inc. v. Sanders*, 251 So.2d 644 (La. App. 2 Cir. 1971); Black's Law Dictionary (6th ed. 1990), p. 1599.

43. Other courts have found that "willful" means a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act. *Johnson v. Aymond*, 722 So.2d 1224, 1234 (La. App. 3 Cir. 1998); *U.S. v. Murdock*, 290 U.S. 389, 54 S. Ct. 223, 78 L. Ed. 2d 381 (1933).  "Willful" connotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental or pure happenstance.

44. Plaintiff must merely show direct or circumstantial evidence of willful misconduct or actions.  Plaintiff need not produce a "smoking gun" or any other form of definitive proof of the defendant's intent or conscience. *Whitesides, supra*; *Cushman v. Trans Union Corp.*, 920 F. Supp. 80, 84 (U.S.D.C. E.D Pa. 1996).

45. Punitive damages may be awarded for willful violation of any provision of the FCRA and malice, intent, scienter, or evil motive need not be proven. *Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir. 1980); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986)(La.); *Boothe v. TRW Credit Data*, 768 F. Supp. 434 (U.S.D.C. S.D. N.Y. 1991); *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (U.S.D.C. M.D. Fla. 1985); *Jones v. Credit Bureau of Huntington, Inc.*, 399 S.E.2d 694 (W.Va. 1990); *Nitti v. Credit Bureau of Rochester, Inc.*, 84 Misc.2d 277, 375 N.Y.S.2d 817; *Trans Union Corporation v. Crisp*, 896 S.W.2d 446 (Ark. App. 1995). A reckless indifference to plaintiff's rights under the Fair Credit Reporting Act ("FCRA") will justify an award of punitive damages. *Collins v. Retail Credit Co.*, 410 F. Supp. 925 (U.S.D.C. E.D. Mich. 1987).

## CONCLUSION

46. ARS has not met their burden to show that there are no material facts at issue for any element of the Plaintiff's complaint. In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Lynch v. Props, 140 F.3d at 625. The Defendant has proffered nothing more than a generic letter from a third party law firm with statements that reference alleged facts and events where no evidence has been brought before the Court to substantiate the alleged claims of being retained to collect, referred or owning, or owning an interest in any "account" which would give them permissible purpose to obtain Hinkle's credit report.

47. ARS has failed to establish evidence before the court or to Plaintiff to show or prove there was ever any contract by which they were "**retained**" by Capital One specifically to collect

any alleged debt belonging to Hinkle. There is however more than reasonable implication that they could not have been "retained" by Capital One but had rather obtained by purchase the alleged account information from yet another third or even fourth party. From this evidence alone, notwithstanding any further evidence which could be brought out during the discovery process, a jury could reasonably find that ARS knowingly and willfully obtained the consumer report under false pretenses which certainly provides for a material fact matter at issue still before the Court.

48. According to Blacks Law 4th Edition there is a substantial difference between being "retained" and "purchasing" a consumers information.

    a. **RETAIN**: To continue to hold, have, use, recognize, etc. and to keep. (*Kimbal Trust & Savings Bank v Hartford Accident & Indemnity Co.*, 333 Ill. 318, 164 N.E. 661, 662.) In practice. To engage the services of an attorney or counselor to manage a cause.

    b. **HIRING**: A contract by which one person grants to another either the enjoyment of a thing or the use of the labor and industry, either of himself or his servant, during a certain time, for a stipulated compensation, or by which one contracts for the labor or services of another about a thing bailed to him for a specified purpose.

    c. **HIRER**: One who hires a thing, or the labor or services of another person. Turner v. Cross, 83 Tex. 218, 18 S.W. 578, 15 L.R.A. 262.

    d. **ASSIGN**: To make over or set over to another. *North Tex. Nat. Bank v Thompson*, Tex. Civ. App., 23 S.W.2d 494, 499. To appoint, allot, select, or designate for a particular purpose, or duty.

    e. **PURCHASE**: Transmission of property from one person to another by voluntary act

and agreement, founded on a valuable consideration. *Spur Independent School Dist. v W. A. Holt Co.*, Tex. Civ. App, 88 S. W.2d 1071, 1073.

49. Although Hinkle could have included FDCPA allegations in this case that were present a year ago, due to the extenuating circumstance of a house fire which caused a delay in the filing, the Statute of Limitations had run.

50. Upon obtaining Hinkle's credit report ARS made no attempt at collection of the alleged account they claim gave them permissible purpose. There is no information contained in the credit report to justify the need for obtaining it that could not have been obtained with a simple telephone call or letter to Hinkle yet neither was ever attempted. There was no dunning letter sent and no disclosure statement provided after invading Hinkle's privacy by mining her credit report for information. ARS now claims it was "retained" to collect in order to justify the violation yet made not apparent effort to perform its obligation under such a contract. According to Ms. Salvo in her letter *Id.*, such invasions are "standard industry practice", Hinkle contends that standard industry practice does not equate to following the law even if the industry has been practicing it so long it thinks it's legal.

51. The damage done to a consumer's credit score by this "standard industry practice" is just the sort of violation Congress intended to prevent and once done is difficult to correct for the consumer. The Court in *Bryant v TRW*, Inc., 689 F. 2d 72, 79 (6th Cir. 1982), cited a statement by Representative Sullivan, a sponsor of the FCRA, during debate on the House floor:

   a. "...(W)ith the trend toward computerization of billions of accounts and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blip" and key punch

holes in a stolid and unthinking machine which can literally ruin his reputation without cause, make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home." (emphasis by the Court).

52. Plaintiff's allegation of no permissible purpose is a negative averment and the burden of proof in this case rests with the Defendant to prove they did in fact have one. A conclusory statement and mere bare bones information that cannot stand as fact about an alleged account, personal information in regard to the Plaintiff and an assumption that the acquisition of electronic data constitutes an authentic fact is ludicrous. The fact that the Defendant may have been allowed to prevail in the past with such hearsay, un-validated and un-authenticated claims does not necessarily equate to following the law. This case is not based on any alleged debt but rather on the actions of the Defendant which led to their assumption of a permissible purpose to obtain Plaintiff's consumer credit report in 2010 and not whether or not they could create such a basis in 2013.

53. A debt collector is assumed to be a sophisticated business entity "*familiar*" with the law, whereas the least sophisticated consumer is anything but by definition. For a debt collector to fail to fulfill its **duty** to authenticate information obtained in regard to consumers would create a "loophole", an 'end-run' around that duty which would be inconsistent with the drafters' of consumer protection statutes intention of protecting debtors from "unfair, harassing, and deceptive collection tactics". If all that would be required is to state "we had a permissible purpose because so and so said so and so and so gave us some information about a debt", without performing any attempt to validate, authenticate and establish factual evidence of the information, even the Plaintiff in this case could purport to have a permissible purpose to obtain another's credit report. ARS has shown no fact evidence that

there was any attempt to authenticate before violating Hinkle's privacy and obtaining her

consumer credit report.

WHEREFORE, because the Defendant has failed to show there are no issues of material fact

before the Court the Plaintiff respectfully requests the Court deny the Defendant's motion for

summary judgment and allow Plaintiff's claim to move forward to trial on the merits and to

complete the discovery process.  In the event the Court should determine that Plaintiff has failed

to state in her pleadings an adequate claim for relief, Plaintiff requests the Court grant her leave

to amend her Complaint.

Dated: *Jan 23, 2013*

Respectfully Submitted,

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023
31023
Tel.: 478-374-4132

# AFFIDAVIT

NOW COMES the Affiant,  Teri Lynn Hinkle of Dodge County, Georgia who is over the age of 21, competent to testify, and declares as follows under penalty of perjury regarding Case No. 3:12-cv-00052-DHB-WLB, Teri Lynn Hinkle v. ARS National Services Inc.:

1.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. is the owner of any alleged account of Teri Lynn Hinkle.

2.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. acquired any alleged account of Teri Lynn Hinkle.

3.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. acquired any interest in any alleged account of Teri Lynn Hinkle.

4.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. was retained to collect any alleged account of Teri Lynn Hinkle as stated in the letter of Cindy D. Salvo of Salvo Law Firm, sent to Plaintiff June 2, 2011.

5.  That prior to the letter from Cindy D. Salvo Affiant/Plaintiff never received any type of communications whatsoever from ARS National Services Inc.

6.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. was retained to collect any alleged account

of Teri Lynn Hinkle by "Capital One", as stated in the letter of Cindy D. Salvo of Salvo Law

Firm, sent to Plaintiff June 2, 2011.

7.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that

would show or prove that there is any alleged account of Teri Lynn Hinkle that originated with

Capital One where there is any balance due and owing that could be collected by ARS National

Services Inc.

8.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that

would show or prove that there is any alleged account of Teri Lynn Hinkle where there is any

balance due and owing that could be collected by ARS National Services Inc.

9.  That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that

would show or prove that there is any permissible purpose for the defendant and/or their counsel

in Case No. 3:12-cv-00052-DHB-WLB in the United States District Court for the Southern

District of Georgia, Dublin Division to obtain the credit report of Teri Lynn Hinkle

10. That Affiant/Plaintiff at no time gave permission to ARS National Services Inc. or its counsel to

obtain her credit report.

11. At the time of the filing of this affidavit the parties involved are presently engaged in the

discovery process.

12. The parties involved held a good faith telephone conference discussing ARS's demand that

Plaintiff dismiss the case in August of 2012, to the best of Plaintiff's recollection. Defendant's

General Counsel, Dan Montenaro agreed to provide "contractual evidence" of their permissible

purpose within the week. Mr. Montenaro has failed to provide the agreed upon documents.

SIGNATURE OF NOTARY ON NEXT PAGE

## NOTARY'S VERIFICATION

STATE OF GEORGIA

COUNTY OF DODGE

On this day personally came before me the above-named Affiant, who proved his identity to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and stated that he did so fully understanding that he was subject to the penalties of perjury.

### AFFIRMATION

I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true and correct.  I hereby further affirm that the basis of these beliefs is my own direct knowledge of the statements described herein.

Further the Affiant sayeth naught.

Signed in Eastman, Georgia

January 23 , 2013

Teri Lynn Hinkle

Name of Notary: Tammy Jones McCranie

Signature of Notary:

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### DUBLIN DIVISION

|  |  |  |
|---|---|---|
| **Teri Lynn Hinkle** | ) | |
| **Plaintiff** | ) | |
|  | ) | |
|  | ) | **CIVIL ACTION** |
| **vs** | ) | **FILE NO. 3:12- cv-00052-DHB-WLB** |
|  | ) | |
| **ARS NATIONAL** | ) | |
| **SERVICES, INC.** | ) | |
| **Defendant** | ) | |
|  | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have mailed copies of the above document by first class mail USPS to all parties listed below.

Dated: January 24, 2013

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023
478-374-4132
queensongbird@gmail.com

ARS NATIONAL SERVICES, INC.
C/O BEDARD LAW GROUP, P.C.
Jonathan K. Aust
2810 Peachtree Industrial Blvd. Ste.D
Duluth, Georgia 30097

**DuPont® Tyvek®**
**Protect What's Inside™**

*Schedule package pickup right from your home or office at usps.com/pickup*
*Print postage online - Go to usps.com/postageonline*

PLEASE PRESS FIRMLY

**RECIPIENT**
*The sender has requested notification upon delivery.*
*Immediately upon receipt, please telephone:*
NAME: ______________________
Tel. No.: ( ) ______________________

PLEASE PRESS FIRMLY

**EXPRESS® MAIL**
**UNITED STATES POSTAL SERVICE**

# Mailing Envelope
**For Domestic and International Use**

EMS

EXPRESS ...

U.S. POSTAGE PAID
EASTMAN, GA
31023
JAN 24, 13
AMOUNT
$14.95
00030247-03

UNITED STATES POSTAL SERVICE
1007

**EXTREMELY URGENT**

**Please Rush To Addressee**

When used internationally affix customs declarations (PS Form 2976, or 2976A).

**Visit us at usps.com**

EI353567375US

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

Addressee Copy
Label 11-B, March 2004

Post Office To Addressee

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| PO ZIP Code | Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del Day | Postage $ |
| Date Accepted: Mo. Day Year | Scheduled Date of Delivery: Month Day | Return Receipt Fee $ |
| Time Accepted ☐ AM ☐ PM | Scheduled Time of Delivery ☒ Noon ☐ 3 PM | COD Fee $ / Insurance Fee $ |
| Flat Rate ☐ or Weight: lbs. ozs. | Military ☐ 2nd Day ☐ 3rd Day; Int'l Alpha Country Code | Total Postage & Fees $ / Acceptance Emp. Initials |

**DELIVERY (POSTAL USE ONLY)**

| | | | |
|---|---|---|---|
| Delivery Attempt: Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt: Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |
| Delivery Date: Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |

**CUSTOMER USE ONLY**

☐ WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY ☐ Weekend ☐ Holiday

Mailer Signature

FROM: (PLEASE PRINT) PHONE ( )

TO: (PLEASE PRINT) PHONE ( )

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

EMS

Place Mailing Label

Please Recycle

EP13C

HDPE
070909 EM EP-13C JULY 2009
© 2008 USPS 11-5/8" x 15-1/8"

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail® shipments. Misuse may be a violation of federal law. This package is not for resale.

