**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**DUBLIN DIVISION**

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 FEB 14  PM 12: 34

CLERK_____
SO. DIST. OF GA.

Teri Lynn Hinkle )
     Plaintiff )
  )
  )    **Civil Action File No:**
vs )   **3:12-cv-00052-DHB-WLB**
  )
ARS NATIONAL SERVICES, INC. )
     **Defendant** )
  )

## PLAINTIFF'S MEMORANDUM AND AFFIDAVIT IN OPPOSITION TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT, BRIEF IN SUPPORT AND REQUEST FOR FEES

TO THE HONORABLE JUDGE OF THIS COURT:

The Plaintiff, Teri Lynn Hinkle asks the court to deny Defendant's second motion for summary

judgment and requests for fees and states as follows:

### INTRODUCTION

1. Plaintiff is Teri Lynn Hinkle, hereinafter Hinkle; Defendant is ARS National Services, Inc., hereinafter, ARS.

2. On June 15, 2012 Hinkle sued ARS for violations of the Fair Credit Reporting Act (hereinafter FCRA) in this Court.

3. On July 26, 2012 ARS filed a Motion to Dismiss. (*See* Dkt. #7)

4. On November 16, 2012 ARS filed a second Motion to Dismiss. (*See* Dkt. #21)

5. On January 7, 2013 the Court ruled that Defendant's motions to dismiss (Dkt.#'s 7 & 21) were to be converted to a Motion for Summary Judgment. (*See.* Dkt. 26, pg 8, ¶2). Both parties were given ten days to submit any supporting materials in evidence in regard to their respective positions.

6. On January 24, 2013 Defendant filed a new and separate motion for summary judgment (Dkt.# 29).

7. On January 25, 2013 Plaintiff filed a *memorandum in opposition* (Dkt. #31), to the converted motion for summary judgment created by the Court's Order of January 7, 2013

8. On January 29, Plaintiff filed a Notice of Non-Compliance (Dkt. #33).

9. On February 6, Plaintiff filed a motion to strike the affidavit and attached documents of Dan Montenaro (Dkt. #34).

10. On February 8, 2013 Defendant filed a motion for extension of time to respond (Dkt. #35) and Plaintiff mailed to the Court a timely response in opposition to any extensions on February 9, 2013.

11. Summary judgment is improper in this case because there are genuine issues of material fact on each element of Plaintiff's cause of action for violations of the FCRA: no permissible purpose to obtain Plaintiff's credit report.

## STATEMENT OF FACTS

12. In order to comport with Local rule 56.1 and F.R.C.P. 56 *et al*, Hinkle states as follows:

    a. ARS does not argue that the complaint was filed against them.

    b. ARS does not argue that they obtained the credit report of Hinkle; there is no verified evidence in any form that has been entered into the court record showing ARS was

"retained" to collect any legitimate debt from Hinkle; There is no verified evidence in any form that has been entered into the court record showing ARS did not obtain Hinkle's social security number by fraud or misrepresentation.

c. Other than a an Affidavit with attached exhibits by Dan Montenaro which Hinkle has motioned the court to strike, (See Dkt.#34), containing obviously questionable information, there is nothing before the court as evidence to establish proof of a permissible purpose at the time ARS obtained plaintiff's credit report in 2010.

d. The Salvo letter is not admissible fact evidence[1], and the affidavit of Cindy Salvo is hearsay by a third party with no firsthand fact evidence to present.

13. Plaintiff repeats all statements put forth in her previous memorandum in opposition to the first summary judgment motion. (Dkt. #31)

14. Cindy D. Salvo in her letter sent to Plaintiff on June 2, 2011. (*See* Defendants Ex.A, Dkt.#21 & affidavit of Cindy D. Salvo Dkt.#29) makes mere conclusory statements that do not constitute fact evidence. *See Leigh v Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)[2] and *Ellis v England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005)[3]. See also *Bald Mountain Park Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)[4]

15. According to the web site of Lemberg & Associates in Connecticut[5] specializing in consumer law matters:

---

[1] *Deutsche Bank National Trust v Constance Lawrence Mitchell*, Sup.Ct. of NJ, Appellate Division Dkt. #A-4925-09T3, August 9, 2011 "Attorneys in particular should not certify to 'facts within the primary knowledge of their clients.

[2] "This court has consistently held that conclusory allegations without supporting facts have no probative value."

[3] "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"

[4] "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat a summary judgment."

[5] http://www.stopcollector.com/agency/ARS-National-Services.php

a. "ARS National Services is a debt collection agency headquartered in Escondido, California. They employ over 650 people in five offices… The company has been in business since 1992, and claims to provide collection services for some of the biggest financial firms in the country. However their website **does not include a solicitation for business, no information for businesses that may want to engage them to do collections, and no contact information**."

b. "It seems that ARS National Services purchases very old debt from multiple other debt collection agencies – what's called a second or third tier collection agency. The debts they are attempting to collect on are often long past the statute of limitations, and are missing a great deal of the original information. Since debt buyers purchase the accounts for fractions of pennies on the dollar of their face amount, their aim is often to collect as much as possible from whomever they can convince to pay. Since ARS National Services offers an "aggressive performance bonus" policy to account representatives, the debt collectors for the company are highly motivated, which may cause them to brush up against the line of the Fair Debt Collection Practices Act or the Fair Credit Reporting Act."

c. "In fact, a search of the federal dockets turns up over 150 lawsuits filed against ARS National Services Inc. since 2006, all of them for alleged violations of the Fair Debt Collection Practices Act or the Fair Credit Reporting Act."

16. The use of electronic files passed from one computer to another has become the engine of fraud in the debt collection industry. As long as the courts are willing to accept digital

information generated by digital decisions and conclusory statements based upon that

information the theft and abuse will continue and increase exponentially.

17. In Rosenau v Unifund Corp U.S.D. 3rd Cir., No. 07-3019 June 30, 2008 the Court stated:

    a.  "Unifund purchases old consumer debt. It buys the debt from credit card companies

        in the form of data files that contain information on thousands of consumer accounts.

        Unifund's **proprietary software** then runs **queries** to determine which accounts

        Unifund will pursue for collection and which it will resell. Once the system has

        flagged the accounts that will be collected, another automated process generates

        letters that are mailed to consumers to begin the collection efforts. Unifund mails

        about 2,000 of these collection letters each day."

18. It would appear that it is computers and software making the decisions to "**query**"

consumers' private financial information and not human beings which begs the question; are

the computers also automatically "certifying" permissible purpose to the credit reporting

agencies just as they automatically decide who's private credit information they will invade?

Artificial intelligence is just that, artificial and cannot be trusted to "automatically" follow

the law intended to protect consumers. That is precisely why we do not have robots sitting on

the benches of the nation's courts.

19. There is no verified evidence in any form that has been entered into the court record showing

ARS was "retained" to collect anything from Hinkle.

20. Hinkle does not dispute that the letter from The Salvo Law Firm, P.C. was an authentic letter

sent by them but has repeatedly disputed its contents. The letter contains nothing more than

hearsay claims that ARS was "**retained**" to collect an "**alleged debt**" and that one had been

"**turned over to them**". Mere alleged, conclusory and hearsay statements are not enough to

establish a "**reason to believe**" as a matter of law. *See Miller v Wolpoff & Abramson*[6]

21. The FCRA defines the procedures for certification to the credit reporting agencies which

users must provide when requesting inquiries into a consumer's information... "These

procedures shall require that prospective users of the information identify themselves, certify

the purposes for which the information is sought, and **certify** that the information will be

**used** for no other purpose." 15 U.S.C. § 1681e(a).

22. After seeking remedy for the invasion of her privacy which ARS committed in May of 2010,

the inquiry disappeared from her credit report which would suggest it should not have been

there in the first place.

23. Nothing has been established as to what type, if any, certification was presented to the CRA

prior to ARS obtaining Plaintiff's credit report.

24. The FCRA requires that anyone who uses a credit report or another type of consumer report

to deny an application for credit, insurance, or employment – **or to take another adverse**

**action** against you – must tell you, and must give you the name, address, and phone number

of the agency that provided the information. There is no doubt whatsoever that obtaining a

consumers private, financial information without their knowledge in a manner which could

affect something as vital to them as a credit score or create the possibility of that information

---

[6] Miller v Abramson, LLP, 2d Cir., No. 02-7017, Feb. 25,2003 Defendants in the case indicate they reviewed no
more than "*very limited information*" before collection action such as; "*Mr. Miller's full name, social security
number, current address, telephone number and the Lord & Taylor account number, the amount of the debt and
a notation that Mr. Miller was an attorney*". The Court held that the "*information reviewed would not enable a
determination of whether Mr. Miller was in bankruptcy, whether information in the record was inconsistent or
incomplete, whether Miller was or was not obligated to pay the debt, or whether Miller was the correct
debtor.*"...... "*the information supplied was too insufficient to support the conclusion as a "matter of law*"....
Judge Sotomayor  stated; "*On this undeveloped record, however, it suffices for us to hold that merely being told by
a client that a debt is overdue is not enough.* "

being seen and even used by an unknown number of people would constitute an adverse action. At no time did ARS notify Plaintiff they had taken said adverse action and it was only when Plaintiff sent her first letter of intent to sue that it attempted to back pedal and claim they had a right to do so.

## RESPONSE TO DEFENDANT'S ALLEGED UNCONTESTED FACTS

25. In Defendant's second motion for summary judgment they list twenty three items which are stated to be uncontested. Plaintiff does contest these items and till enumerate as follows:

   a. **Items 1 through 8** - There is nothing in the record shown that ARS was "contracted" to collect anything from anybody. ARS relies on nothing more than conclusory statements about unverified electronic data from an unknown data base, an unknown computer and entered by unknown parties at unknown locations to make statements it expects to be taken as fact.

   b. **Items 9 through 10** - ARS states it accessed Plaintiff's TransUnion credit report twice in May of 2010. According to the unverified electronic data submitted as attachments to the affidavit of Dan Montenaro TransUnion shows only one access in May of 2010 although they are required by law to show all instances of access to a consumers credit file.

   c. **Items 11 through 20** - ARS fails to mention the fact that Plaintiff sent two letters, the first a Letter of Intent (See Exhbit "H" attached) and the second, a Letter of Suit pending. ARS responded to both with nothing more than a conclusory claim of permissible purpose unsubstantiated by anything other than the word of a third party who could have no firsthand knowledge of what, if anything, was done in

2010 to **certify** a "reason to believe" there was a legitimate permissible purpose. No evidence of any contract or agreement granting ARS the authority to invade Plaintiff's personal financial information was then or ever has been provided. No records of "certification" to TransUnion to establish a "permissible purpose" under 15 U.S.C. §1681e was then or ever has been provided. Plaintiff provided two opportunities for ARS to open communications to prove to her their invasion into her privacy had been lawful and settle the matter. ARS chose instead to make statements to the effect that they had a permissible purpose because they say so and that should put an end to the matter. Are we to believe that Congress has granted to the debt collection industry the power to abuse, invade the privacy of and damage consumers with impunity as long as they comply with a simple conclusory statement such as "we are legal because we say so and the courts agree with us"?

d. **Item 21** - Plaintiff has no way of knowing if ARS obtained her credit report in 2008 as those inquiries would not show on the credit reports she obtained in 2011. No mention of ARS having obtained her credit report in 2008 was ever made until after Plaintiff pointed out in her memorandum in opposition to the first motion for summary judgment created by the conversion order (Dkt.#26), that there had been several other entities making the same claim to the same alleged debt prior to ARS entering the picture in 2010. So Plaintiff is expected to believe as is the Court that suddenly there were not just one but "two" contracts with a third party to collect on an alleged debt which afforded ARS a permissible purpose AND that

ARS twice breached those contracts by not making a single attempt to collect and

doing nothing other than invading Plaintiff's privacy? No phone calls , no made

dunning letters sent and no reporting or any other standard collection actions?

e.   **Item 22** - The reason for ARS having accessed Plaintiff's credit report is now and

continues to be contested as stated above. (*Id* #c).

f.   **Item 23** - According to statements by consumers and attorneys gathered from

online sources it is doubtful and not established by fact evidence that ARS is

simply a collection agency operating only on behalf of its "clients" and not in fact

a "junk debt buyer" as well.

## ARGUMENT

26. ARS makes conclusory statements not supported by any authenticated evidence before the

Court. In support of their claim to have been "retained" to collect on an alleged debt

purported to be owed by Plaintiff they attach nothing more than print outs of electronic data

from an unknown source, from an unknown computer and with no record of what human

being, if any, originally created the data. There is no documentation shown to prove ARS

was hired or contracted by any entity.

27. ARS makes conclusory statements out of context as to Plaintiff's correspondence with it by

ignoring Plaintiff's first letter sent to them.  ARS made no attempt to prove to Plaintiff they

had a lawful reason to access her credit report in 2010 and instead made the same blanket

conclusory statements they have made in this case. Instead of providing proof of a

permissible purpose and proper evidence of  "certification" to the credit reporting agency

before obtaining Plaintiff's credit report they simply say they had it because they were attempting to collect an alleged account. Mere notice of a stated permissible purpose by a third or even fourth party does not constitute proof by any stretch of the imagination. At no time in either letter did Plaintiff agree with ARS's argument and does not now.

28. ARS claims that being a debt collection agency, it "has permissible purpose" to obtain a copy of the credit report as a matter of law by reason of 15 U.S.C. § 1681b(3)(A) which states:

   a. **any consumer reporting agency** may furnish a consumer report under the following circumstances and no other:  To a person which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, **or review or collection of an account of, the consumer**;...(emphasis added).

29. 15 U.S.C. § 1681b(a)(3)(A) refers to the **consumer reporting agency** and **its reason to believe** the person making the request for the consumer report "*intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer.*" 15 U.S.C. § 1681b(a)(3)(A) **does not refer to an entity claiming to have a permissible purpose** when in truth it is not authorized to collect an alleged account on behalf of the actual creditor. It does not refer to a third party with whom there has never been any extension of credit, contractual obligation and or agreement with the consumer. It does not refer to any third party which has not provided any factual claim to

having been "retained" by an actual creditor who may or may not have been involved with a "credit transaction" with the consumer.

30. ARS has repeatedly stated it had a permissible purpose based solely on its "intent" which it claims was to "collect" on an alleged account but never made a single attempt to collect anything for any reason from Plaintiff. Plaintiff never heard of ARS until she found they had obtained her credit report.

31. Under 15 U.S.C. 1681b(a)(3)(A) the Credit Reporting Agency must have had certification from the **user**, (ARS) as to its intended **use** which must fall under the list of permissible purposes, before providing Plaintiff's credit report. ARS is claiming they had permissible purpose under the vague verbiage of "collection of an account" yet not a single action was ever made in an attempt to collect any alleged account from Plaintiff. Collectors often cite *Pintos v Pacific Creditors Association*, No. 04-17485 (April 30, 2009) by taking it out of context, generally by omitting the two most important words. The court held that debt collection does **not necessarily** constitute a permissible purpose under the FCRA to obtain a consumer's credit report... The majority's distinction in Pintos was between obtaining a credit report in the process of collection of a judgment (permissible in the eyes of the majority), and obtaining a credit report in the collection of an account before there was a judgment (not permissible according to the majority). In its findings the court in Pintos also relied on (*Mone v. Dranow, 945 F.2d 306 (9th Cir. 1991)*... The court without discussion, concluded that the Defendant couldn't rely on 1681b(a)(3)(A) because it did not **USE** the credit information in connection with a credit transaction involving the consumer.) ARS did

not **USE** the information it obtained in Plaintiff's credit report **AT ALL** including for any collection action with Plaintiff.

32. Under 15 U.S.C. § 1681e(a), the procedures for certification to the Credit Reporting Agency in regard to obtaining an individual's credit report are; "These procedures shall require that prospective **users** of the information identity themselves, **certify** the **purposes** for which the information is sought, and certify that the information will be used **for no other purpose**."

33. A good explanation of the required procedures under Section 607, [15 U.S.C. § 1681e, and the reason they are so often violated can be found here;

    a. http://fcralawyer.blogspot.com/2009/11/part-1-of-explanation-of-15-usc-1681e.html [This section requires the credit bureaus to have reasonable procedures to prevent impermissible accesses to consumers' credit reports. Unfortunately, the CRAs procedures are not that good. Other than the initial investigation of a new user before the CRA will start selling reports to it, the CRAs only require a "certification" that the user is getting the credit report for a permissible purpose. The problem is that the user can "certify" any reason it wants that is permissible whether it's really the reason why it's getting the credit report or not. Only after the user gets caught will the CRA be on notice that the user is not on the up and up, which then causes the last sentence of 1681e(a) to kick in.]

    b. This would certainly explain why, when consumers dispute inquiries found on their credit   reports to the credit reporting agencies the inquiries suddenly disappear from the credit report in question without explanation.

34. Other than copies of  created from electronic data of unknown origin attached to the affidavit

   of Dan Montenaro, (Dkt #29), self-identified as ARS's General Counsel and Vice President

   of Risk Management there is nothing on the record shown that ARS had authority to collect

   anything from Plaintiff in 2010. Mr. Montenaro testifies in his affidavit that the records

   attached as Exhibits A & B are the records maintained in the normal course of ARS'

   business and the entries contained were made "at or near the time of the events described in

   those entries". Exhibits A & B clearly show that not only do the records not pertain to ARS

   National Services, Inc. but instead relate to Associated Recovery Systems, Inc. and they also

   show a date of origination of June 20, 2012, five days after the initial filing of this case and

   not in May of 2010 when the violation made the basis of this case occurred. There is nothing

   which indicates these documents existed in 2010 and were not wholly contrived in June of

   2012 possibly for litigation purposes. Nothing which can be created today can provide a

   basis for an action taken nearly three years ago and certainly cannot provide a retro-active

   "reason to believe" for the CRA to have given access to ARS of Plaintiff's credit report.

35. ARS has provided no verified evidence of any contract or assignment to the Court or to

   Plaintiff which indicates a specific ownership or right to collect ANY alleged account of

   Plaintiff in 2010. The affidavits of individuals who could have no firsthand knowledge of the

   alleged debt being claimed as having afforded ARS a permissible purpose are hearsay and

   mere conclusory statements. Being "familiar" with ARS's internal records and business

   practices does not equate to firsthand fact knowledge of how those records were created,

   when they were created or by whom. Electronic data is subject to literally millions of

   variables in its accuracy when moving from one computer to another and only the flesh and

blood human being who originally creates such data can testify as to its veracity. ARS merely states, we have this information and therefore we had a permissible purpose to obtain the credit report. Plaintiff never gave ARS, directly or indirectly, permission to obtain her credit reports.

36. Defendant's assertion that Plaintiff filed this case in "Bad Faith" or that it is "Frivolous" based on a single letter taken out of context is without foundation. Plaintiff attempted to communicate twice by mail and again in emails with ARS. Defendant also cites a poorly argued case by a pro se who clearly failed to carry his own ball to the finish line as the basis for their request for fees incurred thus far in this case.

37. There are hundreds of thousands of Americans across the nation becoming aware of the rampant fraud and violation of their rights connected to the debt collection industry. There is a myriad of information now available to consumers. Examples of pleadings, letters, motions, affidavits etc. are readily available on the internet. PACER is accessible to any consumer. Most states including Georgia have excellent lending and legal library systems. There are forums, discussion groups, complaint and or legal assistance sites dedicated to helping consumers learn to accept the role Congress intended when enacting the consumer protection statutes; that being the responsibility to act as Private Attorney Generals in the enforcement of those statutes. The fact that Plaintiff is making that effort does not constitute bad faith or frivolity. The Plaintiff firmly believes now as she did when filing this action that ARS had no permissible purpose in 2010 to obtain her credit report and to attempt to create one now doesn't cut the mustard and erase the violation which took place nearly three years ago.

38. Plaintiff has already stated in previous pleadings (See Dkt.#'s 33 & 34) that she agreed to dismiss this case early on if Mr. Montenaro provided her with proof of ARS's claim to a permissible purpose which he in turn agreed to provide "within the week".  Montenaro  then followed up with a threat that if Plaintiff did not immediately dismiss the case thereafter that he would instruct local counsel to deliberately inflate the costs to ten or twenty thousand dollars and petition the Court to force her to pay them. If there is any instance of "bad faith" in this case it would appear to be on the part of ARS and not the Plaintiff.

39. ARS has consistently attempted to short circuit Plaintiff's right to due process by avoiding *the discovery process* and in filing repetitive motions which afforded them time to construct in 2013 that which they did not have in 2010. In addition to these dilatory actions the Defendant has attempted, through Dan Montenaro in his capacity as General Counsel, and in an end run around local counsel, to coerce and intimidate Plaintiff into acquiescence to their demands. At no time has Plaintiff attempted to contact the Defendant by going around its counsel or harassed them in any way. Plaintiff has made every attempt to abide by the rules and the orders of this Court from the onset of the case.

40. ARS has a reputation of repeated harassment and abuse with consumers as is evidenced by the number of actions filed against them in federal district courts alone, (See Exhibit "I" ), in recent years and the volume of complaints by consumers found on the internet[7]. Even an anonymous review by ARS employees is revealing as to the common practices at the agency[8].  Comments such as "liars and thieves", "Extremely stressful work environment that

---

[7] http://www.indeed.com/cmp/Ars-National-Services/reviews and http://www.stopcollector.com/agency/ARS-National-Services.php
[8] http://www.complaintsboard.com/complaints/ars-national-services-inc-salt-lake-city-utah-c113646.html

employees refer to as prison", "turnover rate is 120%", "the money makers are never disciplined for their rule breaking", "money hungry crooks" and "the managers lie to you" by people with nothing to lose because their comments are anonymous doesn't paint a picture of a company with upper management who can be trusted to be truthful or one which has any aversion whatsoever to harassment and coercion.

41. The debt collection industry as a whole has demonstrated its untrustworthiness in countless ways as is evidenced by the number of class action suits filed by states and consumers in the last decade. As the call for action by consumers gains momentum even news outlets chime in on the outrage such as this CNN report on February 6, 2013, http://4closurefraud.org/2013/02/11/60-minutes-40-million-mistakes-is-your-credit-report-accurate/ and in this article from CNN Money, http://money.cnn.com/2013/02/06/pf/debt-collection/ and yet the courts continue to simply accept conclusory statements like those made by the Defendant in this case, supported by nothing authenticated and proven to be true as a "reason to believe" they had a permissible purpose under the law.

42. As the FTC[9] pointed out in January of this year, there is more than ample evidence and reason Congress should once again amend the statues and it is yet to be seen as to when or whether they will, but one thing is clear; the debt collection industry is fraught with fraud and blatant violations of the law and will continue to be until either Congress forces a cleanup of the industry or consumers themselves put its feet to the fire. As long as the courts accept the "it is so because I say so" defenses of collectors/debt buyers instead of applying

---

[9] http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf

the clear language of the statutes and the definitions clarified by FACTA, the abuse visited on consumers on a daily basis will remain the status quo.

43. In that FTC publication on pg. ESi, it is pointed out that *"The FTC receives more consumer complaints about debt collectors, including debt buyers, than about any other single industry. Many of these complaints appear to have their origins in the quantity and quality of information that collectors have about debts. In its 2009 study, the Commission expressed concern that debt collectors, including debt buyers, may have insufficient or inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount"* and *"Availability of supporting documents are not guaranteed and a typical statement was made that documents may not even be available"*, pg. iii.

44. There is a dearth of case law reflecting that the courts have failed to properly recognize the need for evidence supporting certification to obtain a credit report and instead have relied on simple conclusory statements, unverified electronic data having passed through many hands and unchallenged affidavits in granting dismissal and judgment in cases such as this one. In addition to those failures Plaintiff would point out that in those cases the nonmoving party failed to properly argue and articulate to the court that the meaning of the plain language within the FCRA is not simply cosmetic and meant to be taken lightly in order to cover the deeper meaning of responsibility.

## STANDARD OF REVIEW

45. Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. See Fed. R. Civ. P. 56(c) ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

46. A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *See Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552-53. ). "Rule 56 mandates the entry of summary judgment, **after adequate time for discovery** and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Riggs v. Anthony Auto Sales*, 32 F. Supp. 2d 405 (1998 Westlaw 663346) (U.S.D.C. W.D. La. 1998); *Simpson v. Anthony Auto Sales*, 32 F. Supp. 2d 407 (1998 Westlaw 663350) (U.S.D.C. W.D. La. 1998). Defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of its claim. Rather, defendant must demonstrate an absence of genuine factual dispute. *See Celotex Corp.*, 477 U.S., 106 S. Ct. at 2555. Only if defendant meets its burden is plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

47. In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The

FCRA, like the other portions of the Consumer Credit Protection Act of 1968, is to be
liberally construed. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995)
(Cal.). Its provisions are to be construed in favor of recovery by the consumer and against
the credit reporting agency or user of credit information.

48. Hinkle must prove the following essential elements to sustain a claim for damages brought
from violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 et seq. against
defendant. ARS obtained Hinkle's credit report without permissible purpose. Because there
is a material fact issue on the element of: ARS obtained Hinkle's credit report without
permissible purpose, ARS is not entitled to summary judgment in this case.

49. For the Defendant to successfully argue for summary judgment they must show that there are
no material fact issues as to any elements of the Plaintiff's cause of action where the only
element is whether ARS had a permissible purpose to obtain Hinkle's credit report.

50. Plaintiff has undeniably shown the Court that there are issues of material fact before the
Court and to grant a motion for summary judgment at this juncture in the proceedings would
be tantamount to short circuiting the judicial process and is not warranted in this case.
Neither has the Defendant shown evidence that Plaintiff has acted in bad faith or harassed
them in any way. Plaintiff has simply stood her ground on her convictions and refused to be
intimidated and coerced or to simply accept hearsay conclusory statements and therefore
Defendant is not entitled to be awarded with the deliberately inflated legal costs incurred by
them thus far.

51. ARS has shown nothing before the Court to evidence that they made even a minimal effort to
authenticate the alleged account purported to belong to Hinkle in 2010 before taking an

action which could have damaged Hinkle nor have they revealed what certification was given to the credit reporting agency before obtaining the credit report.

52. The law is very clear in that "(I)n the absence of statutory definition, a statutory term will be accorded its ordinary meaning." *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir. 1998); *Northwest Forest Resource v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996). One must look to the clear language and plain words as a presumption exists that the Congress intended the plain language to apply in light of the purpose of the statute. *Louisiana Credit Union League v. U.S.*, 693 F.2d 525 (5th Cir. 1982) (La.); *Perrin v. U.S.*, 100 S. Ct. 311, 444 U.S. 37 (1979); *Clardy v. U.S.*, 760 F.2d 590 (5th Cir. 1985); *State of Louisiana, ex rel Guste v. U.S.*, 656 F. Supp. 1310 (U.S.D.C. W.D. La. 1986), affirmed, 832 F.2d 935 (5th Cir.).

53. In cases that involve a party attempting to recover on an account owed to some other party, "proof of an assignment of the account is essential to a recovery." Walker, 208 S.W.3d at 298. The party must show clearly through a valid assignment it is the rightful owner of the account at issue. In other words, every link in the chain between the party to which the debt was originally owed and the party trying to collect the alleged debt must be proven by competent evidence in order to demonstrate standing. Walker, 208 S. W.3d at 298.

54. ARS has not asserted it was "assigned" but rather "retained" by the alleged original creditor. Nonetheless ARS has failed to show its claimed specific "retention" or any other justification for the invasion of Hinkle's privacy and never made a visible attempt to collect.

55. Plaintiff must merely show direct or circumstantial evidence of willful misconduct or actions. Plaintiff need not produce a "smoking gun" or any other form of definitive proof of the defendant's intent or conscience. *Whitesides, supra; Cushman v. Trans Union Corp.*, 920

F. Supp. 80, 84 (U.S.D.C. E.D Pa. 1996).

56. Punitive damages may be awarded for willful violation of any provision of the FCRA and malice, intent, scienter, or evil motive need not be proven. *Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir. 1980); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986)(La.); *Boothe v. TRW Credit Data*, 768 F. Supp. 434 (U.S.D.C. S.D. N.Y. 1991); *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (U.S.D.C. M.D. Fla. 1985); *Jones v. Credit Bureau of Huntington, Inc.*, 399 S.E.2d 694 (W.Va. 1990); *Nitti v. Credit Bureau of Rochester, Inc.*, 84 Misc.2d 277, 375 N.Y.S.2d 817; *Trans Union Corporation v. Crisp*, 896 S.W.2d 446 (Ark. App. 1995). A reckless indifference to plaintiff's rights under the Fair Credit Reporting Act ("FCRA") will justify an award of punitive damages. *Collins v. Retail Credit Co.*, 410 F. Supp. 925 (U.S.D.C. E.D. Mich. 1987).

## SUMMARY JUDGMENT EVIDENCE

57. In support of her response, Hinkle includes the following evidence in the attached appendix:

    a. Exhibit "H"-- Plaintiff's first letter to ARS.

    b. Exhibit "I" -- PACER records of suits filed against ARS.

    c. Exhibit "J" - Affidavit of Teri Lynn Hinkle.

## CONCLUSION

58. ARS has not met their burden to show that there are no material facts at issue for any element of the Plaintiff's complaint. In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."

Lynch v. Props, 140 F.3d at 625. The Defendant has proffered nothing more than a generic letter from a third party law firm with statements that reference alleged facts and events and highly questionable print outs of unverified electronic data where no evidence has been brought before the Court to substantiate the alleged claims of being retained to collect, referred or owning an interest in any "account" which could possibly have given them permissible purpose to obtain Hinkle's credit report in 2010.

59. ARS has failed to establish evidence before the court or to Plaintiff to show or prove there was ever any contract by which they were "**retained**" specifically to collect any alleged debt belonging to Hinkle. There is however more than reasonable implication that they were not "retained" by anyone but had rather obtained by purchase the alleged account information from yet another third or even fourth party. From this evidence alone, notwithstanding any further evidence which could be brought out during the discovery process, a jury could reasonably find that ARS knowingly and willfully obtained the consumer report under false pretenses and without truthful certification to the CRA in question which certainly provides for a material fact matter at issue still before the Court.

60. Upon obtaining Hinkle's credit report ARS made no attempt at collection of the alleged account they claim gave them permissible purpose. There is no information contained in the credit report to justify the need for obtaining it that could not have been obtained with a simple telephone call or letter to Hinkle yet neither was ever attempted. There was no dunning letter sent and no disclosure statement provided after invading Hinkle's privacy by mining her credit report for information. ARS now claims it was "retained" to collect in order to justify the violation yet made no apparent effort to perform its obligation under such a contract. According to Ms. Salvo in her letter *Id.*, such invasions are "standard industry

practice". Hinkle contends that standard industry practice does not equate to following the law even if the industry has been practicing it so long it thinks it's legal.

61. The damage done to a consumer's credit score by this "standard industry practice" is just the sort of violation Congress intended to prevent and once done is difficult to correct for the consumer.  The Court in *Bryant v TRW*, Inc., 689 F. 2d 72, 79 (6th Cir. 1982), cited a statement by Representative Sullivan, a sponsor of the FCRA, during debate on the House floor:

    d. "…(W)ith the trend toward computerization of billions of accounts and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to an impersonal "blip" and key punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home." (emphasis by the Court).

62. Plaintiff's allegation of no permissible purpose is a negative averment and the burden of proof in this case rests with the Defendant to prove they did in fact have one. A conclusory statement and mere bare bones information that cannot stand as fact about an alleged account, personal information in regard to the Plaintiff and an assumption that the acquisition of electronic data constitutes an authentic fact is ludicrous. The fact that the Defendant may have been allowed to prevail in the past with such hearsay, un-validated and un-authenticated claims does not necessarily equate to following the law. This case is not based on any alleged debt but rather on the actions of the Defendant culminating in their decision to obtain Plaintiff's consumer credit report in 2010 without permissible purpose and not whether or not they could create such a basis in 2013.

63. A debt collector is assumed to be a sophisticated business entity "*familiar*" with the law, whereas the least sophisticated consumer is anything but by definition. For a debt collector to fail to fulfill its **duty** to authenticate information obtained in regard to consumers would create a "loophole", an 'end-run' around that duty which would be inconsistent with the drafters' of consumer protection statutes intention of protecting debtors from "unfair, harassing, and deceptive collection tactics". If all that would be required is to state "we had a permissible purpose because so and so said so and so and so gave us some information about a debt", without making any attempt to validate, authenticate and establish factual accuracy of the information, then certify to the CRA that it is not only authentic but will be **used** for a particular purpose which never takes place, even the Plaintiff in this case could purport to have a permissible purpose to obtain another's credit report. ARS has shown no fact evidence that there was any attempt to authenticate before violating Hinkle's privacy and obtaining her consumer credit report.

WHEREFORE, because the Defendant has failed to show there are no issues of material fact before the Court the Plaintiff respectfully requests the Court deny the Defendant's second motion for summary judgment and allow Plaintiff's claim to move forward to trial on the merits and to complete the discovery process. Because the Defendant has also failed to establish bad faith, frivolity or harassment on the part of the Plaintiff, Hinkle also requests this Honorable Court deny their claim for fees incurred in the defense of this case. In the event the Court should determine that Plaintiff has failed to state in her pleadings an adequate claim for relief, Plaintiff requests the Court grant her leave to amend her complaint to correct any deficiencies identified by the Court.

Respectfully Submitted,

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023
Tel.: 478-374-4132

# EXHIBIT "H"

**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To *ARS NATIONAL*
Street, Apt. No.; or PO Box No. *201 West Grand*
City, State, ZIP+4 *Escondido, CA 92025*

PS Form 3800, August 2006          See Reverse for Instructions

7010 0780 0000 2275 7789

Exhibit "H"

May 12, 2011

COPY

**RE: NOTICE OF INTENT TO SUE**

To Whom It May Concern,

I have recently discovered after a thorough examination of my credit files that you have pulled my credit report for no permissible purpose. You did not have my consent and that is a violation of the Fair Credit Reporting act, U.S.C. Title 15, section 1681, (see attached). You pulling my credit without my consent is a violation with statutory penalties of $1000 per violation of the FCRA.

I am prepared to file suit in Federal District Court for said violation and demand a trial by jury. I would prefer to come to a reasonable settlement on this violation of my rights if I hear from you within ten days of your receipt of this letter. Your response must be via email sent to; ~~susancomplaint@gmail.com~~ within that time frame. As I am sure you are aware, litigation in the Federal Court can become rather expensive and I would much prefer an amicable solution to this matter however I am prepared to file suit to recover damages if we cannot come to an agreement within the time frame mentioned above. I look forward to your timely response.

Respectfully,

Teri Lynn Hinkle

U.S. Postal Service Certification Number: 7010 0780 0000 2275 7789

7010 0780 0000 2275 7789

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
**CERTIFIED MAIL**

# EXHIBIT "I"

**Civil Party Search Name ARS NATIONAL SERVICES, INC. filed on or after 01/11/2008 All Courts Page: 4**

Previous 1 2 3 4 Next

| | Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| 1 | ARS National Services, Inc. (dft) almdce | 2:2009-cv-01041 | | 710 | 11/12/2009 | |
| 2 | ARS National Services, Inc. (dft) alndce | 2:2012-cv-02178 | | 480 | 06/15/2012 | 08/20/2012 |
| 3 | ARS National Services, Inc. (dft) alndce | 2:2012-cv-03845 | | 480 | 11/13/2012 | |
| 4 | ARS National Services, Inc. (dft) cacdce | 2:2009-cv-07912 | | 480 | 10/29/2009 | 01/21/2010 |
| 5 | ARS National Services, Inc. (dft) cacdce | 2:2011-cv-02921 | | 480 | 04/07/2011 | 06/07/2011 |
| 6 | ARS National Services, Inc. (dft) caedce | 1:2009-cv-02198 | | 480 | 12/17/2009 | 02/24/2010 |
| 7 | ARS National Services, Inc. (dft) caedce | 2:2011-cv-03037 | | 480 | 11/16/2011 | 03/07/2012 |
| 8 | ARS National Services, Inc. (dft) codce | 1:2009-cv-00625 | | 480 | 03/20/2009 | 05/04/2009 |
| 9 | ARS National Services, Inc. (dft) codce | 1:2009-cv-02672 | | 480 | 11/13/2009 | 12/17/2009 |
| 10 | ARS National Services, Inc. (dft) codce | 1:2010-cv-00986 | | 480 | 04/29/2010 | 06/01/2010 |
| 11 | ARS National Services, Inc. (dft) codce | 1:2010-cv-01335 | | 480 | 06/10/2010 | 07/13/2010 |
| 12 | ARS National Services, Inc. (dft) codce | 1:2010-cv-02159 | | 480 | 09/03/2010 | 10/08/2010 |
| 13 | ARS National Services, Inc. (dft) codce | 1:2010-cv-02640 | | 480 | 10/29/2010 | 12/27/2010 |
| 14 | ARS National Services, Inc. (dft) codce | 1:2011-cv-00451 | | 480 | 02/23/2011 | 05/10/2011 |
| 15 | ARS National Services, Inc. (dft) candce | 5:2008-cv-01842 | | 480 | 04/07/2008 | 07/16/2008 |
| 16 | ARS National Services, Inc. (dft) candce | 3:2010-cv-02707 | | 890 | 06/21/2010 | 08/30/2010 |
| 17 | ARS National Services, Inc. (dft) casdce | 3:2008-cv-02055 | | 890 | 11/06/2008 | 02/25/2009 |
| 18 | ARS National Services, Inc. (dft) casdce | 3:2008-cv-02164 | | 480 | 11/21/2008 | 06/03/2009 |
| 19 | ARS National Services, Inc. (dft) casdce | 3:2009-cv-00780 | | 890 | 04/15/2009 | |
| 20 | ARS National Services, Inc. (dft) casdce | 3:2009-cv-01210 | | 480 | 06/04/2009 | 07/23/2009 |
| 21 | ARS National Services, Inc. (dft) casdce | 3:2009-cv-01751 | | 480 | 08/11/2009 | 09/03/2009 |
| 22 | ARS National Services, Inc. (dft) flsdce | 0:2011-cv-60704 | | 480 | 04/01/2011 | 09/30/2011 |
| 23 | ARS National Services, Inc. (dft) flsdce | 0:2011-cv-60821 | | 890 | 04/15/2011 | 09/21/2011 |
| 24 | ARS National Services, Inc. (dft) flsdce | 0:2011-cv-61227 | | 890 | 05/26/2011 | 01/09/2012 |
| 25 | ARS National Services, Inc. (dft) flsdce | 1:2011-cv-22758 | | 480 | 07/29/2011 | 10/19/2011 |
| 26 | ARS National Services, Inc. (dft) flsdce | 1:2011-cv-22862 | | 480 | 08/09/2011 | 02/15/2012 |
| 27 | ARS National Services, Inc. (dft) flsdce | 9:2011-cv-80967 | | 890 | 08/26/2011 | 10/25/2011 |
| 28 | ARS National Services, Inc. (dft) flsdce | 9:2011-cv-81044 | | 890 | 09/15/2011 | |
| 29 | ARS National Services, Inc. (dft) codce | 1:2011-cv-01845 | | 480 | 07/15/2011 | 08/16/2011 |
| 30 | ARS National Services, Inc. (dft) codce | 1:2011-cv-03381 | | 480 | 12/27/2011 | 02/28/2012 |
| 31 | ARS National Services, Inc. (dft) codce | 1:2012-cv-02301 | | 480 | 08/29/2012 | 10/24/2012 |
| 32 | ARS National Services, Inc. (dft) ctdce | 3:2009-cv-00134 | | 480 | 01/27/2009 | 03/05/2009 |
| 33 | ARS National Services, Inc. (dft) ctdce | 3:2010-cv-01201 | | 480 | 07/20/2010 | 08/25/2010 |
| 34 | ARS National Services, Inc. (dft) ctdce | 3:2010-cv-01860 | | 480 | 11/30/2010 | 12/28/2010 |
| 35 | ARS National Services, Inc. (dft) ctdce | 3:2011-cv-01670 | | 480 | 10/27/2011 | 01/26/2012 |
| 36 | ARS National Services, Inc. (dft) flsdce | 1:2011-cv-23723 | | 890 | 10/13/2011 | 12/19/2011 |
| 37 | ARS National Services, Inc. (dft) flsdce | 1:2012-cv-20565 | | 480 | 02/10/2012 | 04/19/2012 |
| 38 | ARS National Services, Inc. (dft) flsdce | 1:2012-cv-24406 | | 480 | 12/13/2012 | |
| 39 | ARS National Services, Inc. (dft) gandce | 1:2008-cv-00152 | | 480 | 01/14/2008 | 02/22/2008 |

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 40 ARS National Services, Inc. (dft) | gandce | 1:2008-cv-00436 | 480 | 02/07/2008 | 08/12/2008 |
| 41 ARS National Services, Inc. (dft) | gandce | 1:2008-cv-01788 | 480 | 05/16/2008 | 08/27/2008 |
| 42 ARS National Services, Inc. (dft) | gandce | 1:2008-cv-01841 | 480 | 05/23/2008 | 06/27/2008 |
| 43 ARS National Services, Inc. (dft) | casdce | 3:2009-cv-01814 | 480 | 08/20/2009 | 12/15/2009 |
| 44 ARS National Services, Inc. (dft) | casdce | 3:2010-cv-00722 | 480 | 04/06/2010 | 07/15/2010 |
| 45 ARS National Services, Inc. (dft) | casdce | 3:2011-cv-00859 | 890 | 04/22/2011 | |
| 46 ARS National Services, Inc. (dft) | casdce | 3:2011-cv-02734 | 480 | 11/22/2011 | 12/27/2011 |
| 47 ARS National Services, Inc. (dft) | casdce | 3:2012-cv-06183 | 890 | 01/23/2012 | 07/05/2012 |
| 48 ARS National Services, Inc. (dft) | codce | 1:2008-cv-02126 | 480 | 10/01/2008 | 11/17/2008 |
| 49 ARS National Services, Inc. (dft) | gandce | 1:2009-cv-00510 | 480 | 02/26/2009 | 09/22/2009 |
| 50 ARS National Services, Inc. (dft) | flmdce | 8:2011-cv-00196 | 480 | 01/28/2011 | 08/16/2011 |
| 51 ARS National Services, Inc. (dft) | flmdce | 8:2011-cv-00238 | 480 | 02/07/2011 | 03/04/2011 |
| 52 ARS National Services, Inc. (dft) | flmdce | 8:2012-cv-01105 | 480 | 05/17/2012 | 07/13/2012 |
| 53 ARS National Services, Inc. (dft) | flmdce | 6:2012-cv-01237 | 890 | 08/13/2012 | 01/10/2013 |
| 54 ARS National Services, Inc. (dft) | flsdce | 1:2009-cv-23158 | 890 | 10/19/2009 | 01/06/2010 |

Previous 1 2 3 4 Next

| | Party Name | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| 55 | ARS National Services, Inc. (dft) | flsdce | 9:2010-cv-80476 | 440 | 04/06/2010 | 07/28/2010 |
| 56 | ARS National Services, Inc. (dft) | flsdce | 0:2010-cv-62310 | 480 | 11/26/2010 | 03/30/2011 |
| 57 | ARS National Services, Inc. (dft) | flsdce | 9:2011-cv-80192 | 890 | 02/18/2011 | 06/07/2011 |
| 58 | ARS National Services, Inc. (dft) | ilndce | 1:2012-cv-06691 | 480 | 08/21/2012 | 12/18/2012 |
| 59 | ARS National Services, Inc. (dft) | ilndce | 1:2012-cv-10137 | 480 | 12/19/2012 | |
| 60 | ARS NATIONAL SERVICES, INC. (dft) | insdce | 1:2008-cv-00087 | 890 | 01/22/2008 | 04/08/2008 |
| 61 | ARS NATIONAL SERVICES, INC. (dft) | insdce | 1:2008-cv-01652 | 480 | 12/10/2008 | 03/02/2009 |
| 62 | ARS NATIONAL SERVICES, INC. (dft) | insdce | 1:2012-cv-01571 | 480 | 10/25/2012 | 01/31/2013 |
| 63 | ARS National Services, Inc. (dft) | ksdce | 2:2008-cv-02067 | 890 | 02/11/2008 | 04/03/2008 |
| 64 | ARS National Services, Inc. (dft) | gandce | 1:2011-cv-01295 | 480 | 04/20/2011 | 10/26/2011 |
| 65 | ARS National Services, Inc. (dft) | gandce | 4:2011-cv-00179 | 480 | 07/05/2011 | 12/02/2011 |
| 66 | ARS National Services, Inc. (dft) | gasdce | 3:2011-cv-00058 | 480 | 06/16/2011 | 08/18/2011 |
| 67 | ARS National Services, Inc. (dft) | gasdce | 3:2012-cv-00052 | 480 | 06/15/2012 | |
| 68 | ARS National Services, Inc. (dft) | iasdce | 4:2008-cv-00220 | 480 | 06/06/2008 | 08/06/2008 |
| 69 | ARS National Services, Inc. (dft) | iasdce | 4:2010-cv-00550 | 480 | 11/28/2010 | 01/13/2011 |
| 70 | ARS National Services, Inc. (dft) | ilndce | 1:2008-cv-05611 | 480 | 10/03/2008 | 11/10/2008 |
| 71 | ARS National Services, Inc. (dft) | mndce | 0:2012-cv-02914 | 480 | 11/19/2012 | 12/31/2012 |
| 72 | ARS National Services, Inc. (dft) | moedce | 4:2010-cv-01188 | 480 | 07/06/2010 | 12/01/2010 |
| 73 | ARS National Services, Inc. (dft) | moedce | 4:2010-cv-01884 | 480 | 10/07/2010 | 12/22/2010 |
| 74 | ARS National Services, Inc. (dft) | moedce | 4:2011-cv-01055 | 480 | 06/12/2011 | 10/05/2011 |
| 75 | ARS National Services, Inc. (dft) | moedce | 4:2012-cv-01642 | 890 | 09/13/2012 | |
| 76 | ARS National Services, Inc. (dft) | ncedce | 5:2009-cv-00298 | 890 | 07/01/2009 | 09/03/2009 |
| 77 | ARS National Services, Inc. (dft) | ncwdce | 3:2011-cv-00353 | 480 | 07/12/2011 | 12/01/2011 |
| 78 | ARS National Services, Inc. (dft) | ilndce | 1:2009-cv-06899 | 890 | 11/03/2009 | 12/02/2009 |
| 79 | ARS National Services, Inc. (dft) | ilndce | 1:2010-cv-03085 | 480 | 05/19/2010 | 08/24/2010 |

| 80 | ARS National Services, Inc. (dft) | ilndce | 1:2010-cv-05957 | 890 | 06/25/2010 | 08/04/2010 |
|----|----|----|----|----|----|----|
| 81 | ARS National Services, Inc. (dft) | ilndce | 1:2011-cv-02222 | 480 | 04/01/2011 | 07/22/2011 |
| 82 | ARS National Services, Inc. (dft) | ilndce | 1:2011-cv-03095 | 890 | 05/09/2011 | 06/22/2011 |
| 83 | ARS National Services, Inc. (dft) | ilndce | 1:2011-cv-04007 | 890 | 06/13/2011 | 07/25/2011 |
| 84 | ARS National Services, Inc. (dft) | ilndce | 1:2011-cv-04720 | 480 | 07/13/2011 | 09/08/2011 |
| 85 | ARS National Services, Inc. (dft) | ksdce | 2:2008-cv-02169 | 480 | 04/15/2008 | 06/04/2008 |
| 86 | ARS National Services, Inc. (dft) | lamdce | 3:2011-cv-00569 | 480 | 08/19/2011 | 01/09/2012 |
| 87 | ARS National Services, Inc. (cc) | mddce | 1:2010-cv-02369 | 480 | 08/25/2010 | 06/22/2011 |
| 88 | ARS National Services, Inc. (dft) | mddce | 1:2010-cv-02369 | 480 | 08/25/2010 | 06/22/2011 |
| 89 | ARS National Services, Inc. (dft) | miedce | 2:2010-cv-12859 | 480 | 07/20/2010 | 09/17/2010 |
| 90 | ARS National Services, Inc. (dft) | mndce | 0:2008-cv-04765 | 480 | 07/25/2008 | 01/15/2009 |
| 91 | ARS National Services, Inc. (dft) | mndce | 0:2008-cv-04806 | 371 | 07/31/2008 | 10/22/2008 |
| 92 | ARS National Services, Inc. (dft) | ilndce | 1:2011-cv-05379 | 890 | 08/09/2011 | 09/16/2011 |
| 93 | ARS National Services, Inc. (dft) | ilndce | 1:2012-cv-00513 | 890 | 01/24/2012 | 04/09/2012 |
| 94 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 1:2010-cv-05038 | 480 | 09/28/2010 | 01/14/2011 |
| 95 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 1:2011-cv-02450 | 480 | 04/29/2011 | 09/14/2011 |
| 96 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 3:2011-cv-04301 | 480 | 07/27/2011 | 10/11/2011 |
| 97 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 1:2011-cv-06426 | 480 | 11/02/2011 | 01/04/2012 |
| 98 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 3:2012-cv-04938 | 480 | 08/06/2012 | 11/30/2012 |
| 99 | ARS National Services, Inc. (dft) | mndce | 0:2009-cv-03151 | 480 | 11/09/2009 | 06/11/2010 |
| 100 | ARS National Services, Inc. (dft) | mndce | 0:2010-cv-00508 | 480 | 02/23/2010 | 04/15/2010 |
| 101 | ARS National Services, Inc. (dft) | mndce | 0:2010-cv-02814 | 480 | 07/01/2010 | 09/17/2010 |
| 102 | ARS National Services, Inc. (dft) | mndce | 0:2010-cv-04239 | 480 | 10/14/2010 | 04/25/2011 |
| 103 | ARS National Services, Inc. (dft) | mndce | 0:2011-cv-00108 | 480 | 01/14/2011 | 03/03/2011 |
| 104 | ARS National Services, Inc. (dft) | mndce | 0:2011-cv-01525 | 480 | 06/10/2011 | 08/17/2011 |
| 105 | ARS National Services, Inc. (dft) | mndce | 0:2011-cv-01956 | 480 | 07/19/2011 | 08/18/2011 |
| 106 | ARS National Services, Inc. (dft) | nedce | 4:2011-cv-03146 | 480 | 08/26/2011 | 12/20/2011 |
| 107 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 1:2008-cv-03396 | 480 | 07/08/2008 | 11/13/2008 |
| 108 | ARS NATIONAL SERVICES, INC. (dft) njdce | | 2:2009-cv-04790 | 480 | 09/16/2009 | 12/01/2009 |
| 109 | ARS NATIONAL SERVICES, INC. (dft) | njdce | 2:2009-cv-06159 | 480 | 12/04/2009 | 05/24/2010 |
| 110 | ARS National Services, Inc. (dft) | nysdce | 7:2008-cv-10632 | 480 | 12/08/2008 | 06/10/2009 |
| 111 | ARS National Services, Inc. (dft) | nysdce | 7:2010-cv-04231 | 480 | 05/26/2010 | 08/16/2010 |
| 112 | ARS National Services, Inc. (dft) | nysdce | 1:2010-cv-06702 | 890 | 09/08/2010 | 10/13/2010 |
| 113 | ARS National Services, Inc. (dft) | mndce | 0:2012-cv-01523 | 480 | 06/25/2012 | 08/23/2012 |
| 114 | ARS National Services, Inc. (dft) | mndce | 0:2012-cv-02144 | 480 | 08/30/2012 | 01/24/2013 |
| 115 | ARS National Services, Inc. (dft) | nyedce | 2:2009-cv-01195 | 480 | 03/24/2009 | 08/06/2009 |
| 116 | ARS National Services, Inc. (dft) | nyedce | 1:2009-cv-01367 | 480 | 04/01/2009 | 10/26/2009 |
| 117 | ARS National Services, Inc. (dft) | nyedce | 2:2009-cv-04544 | 480 | 10/22/2009 | 02/24/2010 |
| 118 | ARS National Services, Inc. (dft) | nyedce | 1:2009-cv-04609 | 480 | 10/26/2009 | 04/20/2010 |
| 119 | ARS National Services, Inc. (dft) | nyedce | 1:2010-cv-01831 | 480 | 04/23/2010 | 07/01/2010 |
| 120 | ARS NATIONAL SERVICES, INC. (dft) | njdce | 2:2012-cv-05987 | 480 | 09/24/2012 | |
| 121 | ARS National Services, Inc. (dft) | nvdce | 2:2009-cv-02232 | 480 | 11/23/2009 | 02/18/2010 |
| 122 | ARS National Services, Inc. (dft) | nyedce | 2:2011-cv-01630 | 480 | 04/04/2011 | 02/27/2012 |
| 123 | ARS National Services, Inc. (dft) | nyedce | 2:2011-cv-03153 | 480 | 06/30/2011 | 05/24/2012 |

| 124 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-03333 | 480 07/12/2011 01/22/2013 |
|---|---|---|---|---|
| 125 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-03671 | 480 07/29/2011 10/12/2011 |
| 126 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-03829 | 480 08/09/2011 10/31/2011 |
| 127 | ARS National Services, Inc. (dft) | nysdce | 7:2010-cv-07699 | 480 10/08/2010 01/19/2011 |
| 128 | ARS National Services, Inc. (dft) | nysdce | 7:2011-cv-04117 | 890 06/16/2011 11/07/2011 |
| 129 | ARS National Services, Inc. (dft) | nysdce | 1:2011-cv-04995 | 480 07/21/2011 10/02/2012 |
| 130 | ARS National Services, Inc. (dft) | nysdce | 7:2011-cv-05964 | 480 08/25/2011 01/27/2012 |
| 131 | ARS National Services, Inc. (dft) | nysdce | 1:2011-cv-07595 | 890 10/26/2011 03/29/2012 |
| 132 | ARS National Services, Inc. (dft) | nysdce | 1:2011-cv-09326 | 890 12/20/2011 04/19/2012 |
| 133 | ARS National Services, Inc. (dft) | nysdce | 1:2012-cv-00626 | 480 01/25/2012 05/08/2012 |
| 134 | ARS National Services, Inc. (dft) | nyedce | 2:2010-cv-02132 | 480 05/10/2010 08/06/2010 |
| 135 | ARS National Services, Inc. (dft) | nyedce | 2:2010-cv-02468 | 480 05/28/2010 08/06/2010 |
| 136 | ARS National Services, Inc. (dft) | nyedce | 2:2010-cv-03495 | 480 07/30/2010 11/29/2010 |
| 137 | ARS National Services, Inc. (dft) | nyedce | 2:2010-cv-03794 | 480 08/17/2010 01/26/2012 |
| 138 | ARS National Services, Inc. (dft) | nyedce | 1:2010-cv-04485 | 480 10/01/2010 04/12/2011 |
| 139 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-00303 | 480 01/20/2011 05/06/2011 |
| 140 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-01589 | 480 03/31/2011 11/17/2011 |
| 141 | ARS National Services, Inc. (dft) | nysdce | 7:2012-cv-08011 | 890 10/31/2012 12/21/2012 |
| 142 | ARS National Services, Inc. (dft) | nywdce | 1:2009-cv-00156 | 480 02/19/2009 10/28/2009 |
| 143 | ARS National Services, Inc. (dft) | ohndce | 1:2011-cv-01040 | 480 05/20/2011 06/20/2011 |
| 144 | ARS National Services, Inc. (dft) | nyedce | 2:2011-cv-05306 | 890 11/01/2011 02/27/2012 |
| 145 | ARS National Services, Inc. (dft) | nyedce | 1:2011-cv-05769 | 480 11/28/2011 |
| 146 | ARS National Services, Inc. (dft) | nyedce | 2:2011-cv-06162 | 480 12/20/2011 03/08/2012 |
| 147 | ARS National Services, Inc. (dft) | nyedce | 1:2012-cv-02509 | 480 05/17/2012 |
| 148 | ARS National Services, Inc. (dft) | nyedce | 1:2012-cv-05437 | 480 10/31/2012 |
| 149 | ARS National Services, Inc. (dft) | nyedce | 1:2012-cv-05729 | 480 11/20/2012 |
| 150 | ARS National Services, Inc. (dft) | nyndce | 1:2012-cv-00478 | 480 03/16/2012 02/01/2013 |
| 151 | ARS National Services, Inc. (dft) | ohndce | 5:2012-cv-00235 | 480 01/31/2012 03/08/2012 |
| 152 | ARS National Services, Inc. (dft) | ohndce | 4:2012-cv-01524 | 890 06/14/2012 08/21/2012 |
| 153 | ARS NATIONAL SERVICES, INC. (dft) | paedce | 2:2010-cv-02256 | 480 05/14/2010 07/09/2010 |
| 154 | ARS NATIONAL SERVICES, INC. (dft) | paedce | 2:2010-cv-05567 | 480 10/21/2010 05/10/2011 |
| 155 | ARS NATIONAL SERVICES, INC. (unrep) | paedce | 2:2010-cv-05567 | 480 10/21/2010 05/10/2011 |
| 156 | ARS National Services, Inc. (dft) | pamdce | 3:2008-cv-00907 | 480 05/08/2008 06/05/2008 |
| 157 | ARS National Services, Inc. (dft) | pamdce | 3:2010-cv-00192 | 480 01/25/2010 04/07/2010 |
| 158 | ARS National Services, Inc. (dft) | pamdce | 3:2010-cv-02310 | 890 11/08/2010 01/24/2011 |
| 159 | ARS National Services, Inc. (dft) | pamdce | 3:2011-cv-01374 | 480 07/22/2011 02/01/2012 |
| 160 | ARS National Services, Inc. (dft) | pamdce | 3:2012-cv-01610 | 480 08/15/2012 09/26/2012 |
| 161 | ARS National Services, Inc. (dft) | pamdce | 3:2012-cv-02502 | 480 12/14/2012 |
| 162 | ARS NATIONAL SERVICES, INC. (dft) | pawdce | 2:2008-cv-00322 | 890 03/03/2008 05/08/2008 |

Previous 1 2 3 4 Next

| 163 | ARS National Services, Inc. (dft) | sddce | 4:2012-cv-04128 | 890 07/09/2012 10/18/2012 |
|---|---|---|---|---|
| 164 | ARS National Services, Inc. (dft) | tnedce | 3:2011-cv-00421 | 890 08/31/2011 12/19/2011 |
| 165 | ARS National Services, Inc. (dft) | vaedce | 1:2010-cv-00353 | 480 04/08/2010 07/12/2010 |

166 ARS National Services, Inc. (dft)      wvndce 3:2012-cv-00078 480 08/17/2012
167 ARS NATIONAL SERVICES, INC., (dft) insdce  1:2010-cv-01703 890 12/23/2010 02/08/2011

# EXHIBIT

# "J"

# AFFIDAVIT OF TERI LYNN HINKLE

NOW COMES the Affiant, Teri Lynn Hinkle of Dodge County, Georgia who is over the age of 21, competent to testify, and declares as follows under penalty of perjury regarding Case No. 3:12-cv-00052-DHB-WLB, Teri Lynn Hinkle v. ARS National Services Inc.:

1. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. was the owner of any alleged account of Teri Lynn Hinkle in 2008 or 2010.

2. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. acquired any alleged account of Teri Lynn Hinkle in 2008 or 2010.

3. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. acquired any interest in any alleged account of Teri Lynn Hinkle in 2008 or 2010.

4. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. was retained to collect any alleged account prior to ARS obtaining the credit report of Teri Lynn Hinkle as stated in the affidavit and letter of Cindy D. Salvo of Salvo Law Firm.

5. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that ARS National Services Inc. was retained to collect any alleged account prior to ARS obtaining the credit report of Teri Lynn Hinkle as stated in the affidavit of Dan Montenaro.

6. That prior to May of 2011 Plaintiff never received any type of communications whatsoever from ARS National Services Inc.

7. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there is any alleged account of Teri Lynn Hinkle where there is any balance due and owing that ARS National Services Inc. had the authority to collect in 2008 or 2010.

8. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there was any permissible purpose for the defendant and/or their General Counsel in Case No. 3:12-cv-00052-DHB-WLB in the United States District Court for the Southern District of Georgia, Dublin Division to obtain the credit report of Teri Lynn Hinkle in 2008 or 2010.

9. That Affiant/Plaintiff is not in receipt of anything, nor is there anything on the record made, that would show or prove that there was a truthful certification to the credit reporting agency of a permissible purpose to obtain the credit report of Plaintiff in 2008 or 2010.

10. That Affiant/Plaintiff at no time gave permission to ARS National Services Inc. or its counsel to obtain her credit report.

11. At the time of the filing of this affidavit the Plaintiff is still attempting to move forward with the discovery process but has gotten no cooperation from ARS National Services, Inc. thus far.

12. Of the items listed as uncontested facts in ARS National Services, Inc.'s second motion for summary judgment, the only one which is in fact uncontested is that Plaintiff's TransUnion credit report was obtained by them in 2010.

SIGNATURE OF NOTARY ON NEXT PAGE

## NOTARY'S VERIFICATION

STATE OF GEORGIA

COUNTY OF DODGE

On this day personally came before me the above-named Affiant, who proved his identity to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and stated that he did so fully understanding that he was subject to the penalties of perjury.

### AFFIRMATION

I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true and correct.   I hereby further affirm that the basis of these beliefs is my own direct knowledge of the statements described herein.

Further the Affiant sayeth naught.

Signed in Eastman, Georgia

January _13_ 2013

Teri Lynn Hinkle

Name of Notary: Tammy Jones McCranie

Signature of Notary:

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF GEORGIA
### DUBLIN DIVISION

| | |
|---|---|
| Teri Lynn Hinkle )<br>    Plaintiff )<br>  )<br>  ) | **CIVIL ACTION** |
| vs  ) | **FILE NO. 3:12- cv-00052-DHB-WLB** |
|  )<br>ARS NATIONAL  )<br>SERVICES, INC.  )<br>    Defendant )<br>  ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have mailed copies of the above document by first class mail
USPS to all parties listed below.

Dated: February 13, 2013

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023
478-374-4132
queensongbird@gmail.com

ARS NATIONAL SERVICES, INC.
C/O BEDARD LAW GROUP, P.C.
Jonathan K. Aust
2810 Peachtree Industrial Blvd. Ste.D
Duluth, Georgia 30097

Lillibridge
533 Bethel St.
Ashburn, Georgia
31623

Clerk U.S. Dist. Court
600 James Brown Blvd
Augusta, Georgia
30901

**EXPRESS MAIL®**
UNITED STATES POSTAL SERVICE

# Mailing Envelope
**For Domestic and International Use**

EMS

EXPRESS MAIL
U.S. POSTAGE PAID
EASTMAN, GA
31023
FEB 13, 13
AMOUNT
$14.10
00030247-03
1007

**EXTREMELY URGENT** *Please Rush To Addressee*

When used internationally affix customs declarations (PS Form 2976, or 2976A).

**RECIPIENT**
*The sender has requested notification upon delivery. Immediately upon receipt, please telephone:*
NAME: ____________
Tel. No.: (   ) ____________
PLEASE PRESS FIRMLY

*Visit us at usps.com*

EI353574485US

**EXPRESS MAIL** UNITED STATES POSTAL SERVICE® — Addressee Copy (Label 11-B, March 2004) — Post Office To Addressee

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day | Postage $ |
|---|---|---|
| Date Accepted: Mo. Day Year | Scheduled Date of Delivery: Month Day | Return Receipt Fee $ |
| Time Accepted: ☐ AM ☐ PM | Scheduled Time of Delivery: ☐ None ☐ 3 PM | COD Fee $ / Insurance Fee $ |
| Flat Rate ☐ or Weight: lbs. ozs. | Military: ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees $ |
| | Int'l Alpha Country Code | Acceptance Emp. Initials |

**DELIVERY (POSTAL USE ONLY)**

| | Time | | Employee Signature |
|---|---|---|---|
| Delivery Attempt: Mo. Day | | ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt: Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |
| Delivery Date: Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |

**CUSTOMER USE ONLY**

[redacted]

☐ WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

NO DELIVERY ☐ Weekend ☐ Holiday ☐ Mailer Signature

FROM: (PLEASE PRINT) PHONE (   )

TO: (PLEASE PRINT) PHONE (   )

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811
EMS

Place Mailing Label Here

Please Recycle

EP13C

**DuPont® Tyvek®**
**Protect What's Inside™**
*Schedule package pickup right from your home or office at usps.com/pickup*
*Print postage online - Go to usps.com/postageonline*
PLEASE PRESS FIRMLY

HDPE 2
070909 EM EP-13C JULY 2009
© 2009 USPS 11-5/8" x 15-1/8"

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail® shipments. *Misuse may be a violation of federal law. This package is not for resale.*