ORIGINAL

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAY 20  PM 3: 57

CLERK C.Adams
SO. DIST. OF GA.

TERI LYNN HINKLE,          *
                           *
     Plaintiff,            *
                           *
          v.               *          CV 312-052
                           *
ARS NATIONAL SERVICES, INC.,   *
                           *
     Defendant.            *

_____

O R D E R

_____

On June 15, 2012, Plaintiff Teri Lynn Hinkle, proceeding
pro se, filed the instant action seeking damages under the
Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.
Defendant ARS National Services, Inc., previously filed two
motions to dismiss the case pursuant to Federal Rule of Civil
Procedure 12(b)(6).  On January 7, 2013, this Court converted
these motions to motions for summary judgment and directed the
parties to file any additional materials by January 25, 2013.[1]
(Doc. No. 26.)

_____

     [1]  The Clerk issued a Griffith notice to Plaintiff on
January 8, 2013, informing her of the converted summary
judgment motions and the summary judgment rules, of the right
to file affidavits or other materials in opposition, and of
the consequences of default.  (Doc. No. 28.)  See Griffith v.
Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam).

DHB (34)                                              CCC: _____
                                                           _____

On January 24, 2013, prior to the imposed deadline, Defendant filed another motion for summary judgment and a legal brief, a statement of uncontested material facts, and supporting affidavits. (Doc. No. 29.) The Clerk issued to Plaintiff another notice of the summary judgment motion, which comports with the <u>Griffith</u> requirements.[2] (Doc. No. 30.)

In compliance with the Order of January 7, 2013, Plaintiff filed an opposition and her own affidavit on January 25, 2013. (Doc. No. 31.) Plaintiff also filed a timely response to Defendant's motion for summary judgment filed on January 24, 2013. (Doc. No. 37.) Thereafter, both parties filed sur-replies.[3]

For expediency's sake, and because neither party will be prejudiced thereby, the Court will consider herein the motion for summary judgment filed on January 24, 2013. The time for filing materials in opposition thereto has expired, and the

---

[2] <u>See</u> note 1 <u>supra</u>. Plaintiff takes issue with Defendant for filing a new motion as opposed to simply filing additional materials for consideration on its previously filed motions. (<u>See</u> Doc. No. 33.) Plaintiff's criticism is unwarranted. Indeed, Defendant has complied with the Order of January 7, 2013, by timely filing all materials and factual argument in one comprehensive motion; for this reason, Defendant's filing is actually more efficacious. Moreover, Plaintiff was properly served with a <u>Griffith</u> notice and has responded to the motion, so Plaintiff suffered no prejudice from the manner in which Defendant filed its additional material.

[3] Defendant's motion to extend time to file a reply brief (doc. no. 35) is hereby **GRANTED**. Both parties' reply briefs have been fully considered by this Court.

motion is ripe for consideration.  The Clerk is directed to **TERMINATE** the previously filed and converted motions for summary judgment (doc. nos. 7 & 21.)

One other pending motion must be addressed before turning to the motion for summary judgment.  On February 6, 2013, Plaintiff filed a motion to strike the affidavit of Dan Montenaro, Defendant's Vice President of Risk Management.  The Montenaro affidavit was filed in support of Defendant's motion for summary judgment of January 24, 2013.  In her motion to strike, Plaintiff questions, among other things, Mr. Montenaro's job title, his state of residency, his bar status in California, and the authenticity of the notaries involved. Plaintiff brings these challenges based upon Internet research that yielded, as she sees it, conflicting information. Plaintiff further complains that Mr. Montenaro does not have firsthand knowledge about Defendant's records that he has attached as exhibits to his affidavit and hence his testimony regarding said records is hearsay.  Finally, Plaintiff argues that Mr. Montenaro cannot testify on behalf of Defendant in this matter pursuant to O.C.G.A. § 24-9-25.[4]

To begin, Plaintiff's motion to strike is improper.  A motion to strike is only appropriately addressed toward

---

[4]   O.C.G.A. § 24-9-25 dealt with attorneys testifying against their clients.  The code section was repealed effective January 1, 2013, by the 2011 Georgia Laws Act 52 (H.B. 24).

3

matters contained in the pleadings. E.g., Jordan v. Cobb Cnty., Ga., 227 F. Supp. 2d 1322, 1346-47 (N.D. Ga. 2001) (citing to Fed. R. Civ. P. 12(f)). Affidavits are not pleadings. Instead, Plaintiff must challenge the admissibility of the evidence contained in the affidavit, and the Court will treat her challenges as evidentiary objections.

Here, Plaintiff's objections to the admissibility of the evidence contained within the Montenaro affidavit are overruled. With respect to her challenge to the testimony pursuant to O.C.G.A. § 24-9-25, the Court notes that (1) the statute has been repealed, (2) Mr. Montenaro is not listed as counsel of record for Defendant in this case, and (3) the procedural law of Georgia has no application to this federal proceeding. In consideration of applicable federal law, the Court finds that Mr. Montenaro's affidavit is proper under Federal Rule of Civil Procedure 56(c)(4) in that it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated."[5]  Contrary to

---

[5]  The Court also finds no merit in Plaintiff's challenge to the affidavit's notarization. Plaintiff complains that the notary public lives 61 miles from Defendant's corporate office, making it infeasible for her to have properly notarized the affidavit. This utter speculation is not sufficient to call into question the authenticity of the notarization or of the affiant's signature. Plaintiff further complains that the notary did not attest that she required proof of identity from Mr. Montenaro. The law does not require that a notary reflect on the face of the document that

4

Plaintiff's contention, Mr. Montenaro, as a records custodian, is competent to testify about the policy and procedure of Defendant's record keeping process. His testimony is not hearsay in that Federal Rule of Evidence 803(6) provides an exception to hearsay for records of regularly conducted activity – here, the business records of Defendant. Finally, Mr. Montenaro testified under penalty of perjury. Plaintiff has failed to rebut his testimony with any admissible evidence; her Internet research attempting to cast doubt on certain background facts related to Mr. Montenaro's bar membership, job title, and residency is insufficient to raise any question as to the authenticity of the affidavit. That is, Plaintiff has not presented any evidence aside from conjecture to place the authenticity of this affidavit in doubt. Accordingly, the Clerk is directed to **TERMINATE** Plaintiff's motion to strike (doc. no. 34). The Court will fully consider the Montenaro affidavit herein.

## I.   **FACTUAL BACKGROUND**

In her complaint, Plaintiff alleges that Defendant obtained her Trans Union consumer credit report in May 2010.

---

she abided by the law in notarizing a document; rather, her notary stamp signals that she has. In short, Plaintiff's complaints about the notarization do not sufficiently rebut the presumption of authenticity presented by a notarized signature.

(Compl. ¶ 8.)   Plaintiff claims this was done without a permissible purpose and therefore Defendant has violated the FCRA.

Defendant is a collection agency and is in the business of collecting unpaid, overdue credit card accounts on behalf of its creditor clients. (Montenaro Aff. ¶ 19.)  Capital One is a creditor client of Defendant. (Id. ¶ 7.)  Capital One first authorized Defendant to collect on the unpaid credit card account of Plaintiff on or about February 22, 2008. (Id. ¶¶ 8-9.)  In furtherance of its debt collection, Defendant accessed certain credit report related information on Plaintiff from TransUnion on February 22, 2008, and from Experian on February 23, 2008. (Id. ¶¶ 10-11.)  On December 6, 2008, however, Capital One recalled the account from Defendant. (Id. ¶ 12.)

On May 21, 2010, the same account was again placed with Defendant from Capital One for collection. (Id. ¶¶ 13-14.) This time Defendant accessed certain credit report related information from TransUnion on May 21 and May 22, 2010. (Id. ¶¶ 15-16.)  Defendant accessed this information for the purpose of assisting it in the collection of Plaintiff's credit card account. (Id. ¶ 18.)

It appears from the record that Plaintiff sent two e-mails to Defendant complaining that her credit report was improperly accessed. (See Salvo Aff. ¶¶ 2-3 & Ex. A.)  In an

e-mail dated May 18, 2011, Defendant informs Plaintiff that it is permissible for a debt collection agency to access a consumer report for use in debt collection.  (Montero Aff., Ex. C.)  Plaintiff, in fact, recognizes Defendant's claimed permissible purpose in one of her e-mails, dated May 20, 2011, but she contends that the exception does not pertain to credit card accounts. (Id.)  On June 2, 2011, Defendant's counsel sent a letter to Plaintiff, again explaining to Plaintiff that the FCRA permits a debt collector to access a consumer report in connection with a credit transaction including debt collection.  (Salvo Aff., Ex. A.)

On June 3, 2011, Defendant received a letter from Plaintiff, acknowledging receipt of Defendant's May 18, 2011, correspondence.  Nevertheless, Plaintiff threatens a federal lawsuit against Defendant for an alleged violation of the FCRA based upon Defendant "pulling [Plaintiff's] credit information in May of 2010." (Id., Ex. C.)  Plaintiff, however, states that she would settle the matter for $1,000. (Id.)  On June 15, 2012, over a year later, Plaintiff filed the instant complaint.

## II.  SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law."  Fed. R. Civ.

7

P. 56(c).  The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party.  <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied).  The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." <u>Walker v. Darby</u>, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

### III.   LEGAL ANALYSIS

The FCRA imposes civil liability on users of reported credit information that obtain credit reports of consumers for purposes not specified in 15 U.S.C. § 1681b.  One enumerated

permissible purpose is use of a credit report "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Id. § 1681b(a)(3)(A).  That is, collection of a consumer's credit account is a permissible purpose for requesting a credit report. 15 U.S.C. § 1681b(a)(3)(A); see, e.g., Huertas v. Galaxy Asset Mgmt., 641 F.3d 28 (3d Cir. 2011); Korotki v. Attorney Servs. Corp., 931 F. Supp. 1269 (D. Md. 1996); Trinh v. Weltman, Weinberg & Reis Co., LPA, 2012 WL 5824799 (N.D. Ind. Nov. 14, 2012); Norman v. RJM Acquisitions, LLC, 2012 WL 3204977 (N.D. Tex. Aug. 8, 2012); Chavez v. Premier Bankcard, LLC, 2011 WL 5417107 (E.D. Cal. Nov. 8, 2011).

On summary judgment, Defendant has established that it is a debt collector and that it contracted with Capital One to collect on the unpaid credit card account of Plaintiff. Further, Defendant has shown that it accessed Plaintiff's consumer report information in May of 2010 in furtherance of its debt collection.  Under the FCRA, it is permissible for a debt collector to obtain a consumer credit report for the purpose of collecting on an account.  Accordingly, Defendant has shown, by way of affidavit evidence and attached exhibits, that it did not violate the FCRA.

The burden on summary judgment then shifts to Plaintiff

9

to produce evidence showing either that there is a disputed issue of material fact respecting Defendant's claim of a permissible purpose or that Defendant obtained her credit report for an impermissible purpose. Here, Plaintiff insists that Defendant has not produced any evidence, other than hearsay, that it had contracted with Capital One to collect a debt she owed. The Court has overruled Plaintiff's hearsay exception to the affidavit evidence presented by Defendant. Simply put, the evidence presented in the affidavits of Dan Montenaro and Cindy Salvo is admissible.

Plaintiff's only other response is to posit that, in her opinion, Defendant made no effort to verify that the debt owed to Capital One was Plaintiff's debt. However, the FCRA does not contain a requirement that Defendant affirmatively establish the authenticity of the account in order to obtain a credit report. Rather, it only requires that the consumer report be accessed in furtherance of a debt collection effort.

In short, Plaintiff's mere statements that a fact question remains on the issue of Defendant's permissible purpose are not sufficient to create a genuine issue of material fact. Plaintiff has wholly failed to rebut Defendant's evidence of a permissible purpose or present any evidence that Defendant's purpose was for some impermissible purpose. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Plaintiff has simply failed to do so.


## IV.   MOTION FOR ATTORNEY'S FEES

At the close of Defendant's motion for summary judgment filed on January 24, 2013, it requested an award of reasonable attorney's fees.  The FCRA provides the following in regard to attorney's fees:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c).  An award of attorney's fees pursuant to this section must be based upon a finding that a pleading, motion, or other paper was filed in bad faith.  <u>E.g.</u>, <u>Rogers v. Johnson-Normal</u>, 514 F. Supp. 2d 50, 52 (D.D.C. 2007); <u>Bagumyan v. Valery Energy Corp.</u>, 2007 WL 1500849 (C.D. Cal. Apr. 25, 2007).

In this case, Defendant has submitted the affidavit of Jonathan K. Aust, Defendant's attorney of record in the case. Mr. Aust attests that he "personally handled, researched, and drafted pleadings and motions in this litigation," expending 46.40 hours on the matter.  (Aust Aff. ¶¶ 2, 4.)  Mr. Aust

11

states that his billable rate is $195.00 per hour, and thus requests a total fee of $9,048.  (<u>Id.</u> ¶¶ 5, 7.)

A.   <u>Bad Faith</u>

To show that attorney's fees are warranted under § 1681n(c), a party must show a pleading was filed in bad faith. Here, Defendant contends that Plaintiff's complaint was filed in bad faith.   Bad faith requires a showing that the plaintiff's action was unfounded from the outset, frivolous, or brought for the purpose of harassment.   <u>Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n</u>, 434 U.S. 412, 421 (1978); <u>Smith v. HM Wallace, Inc.</u>, 2009 WL 3179539, at *2 (S.D. Fla. Oct. 1, 2009) (requiring a showing that the plaintiff "filed an action that was frivolous, unreasonable, or without foundation"); <u>Lewis v. Trans Union, LLC</u>, 2006 WL 2861059, at *4 (N.D. Ill. Sept. 29, 2006) (awarding attorney's fees pursuant to § 1681n(c) based on a showing that the plaintiff "knew of the falsity and baselessness of the allegations in the complaint when it was filed").

Here, Defendant points to the correspondence between the parties one year prior to the time that Plaintiff filed suit as evidence that she knew her claim was frivolous.   In particular, Defendant advised Plaintiff that it had a permissible purpose to obtain her credit report in May 2010. Indeed, Plaintiff acknowledged that Defendant claimed to be a debt collector with a permissible purpose, but she refused to

12

concede that a collection of a "credit card account" is subject to this exception. (See Pl.'s May 20, 2010 E-mail, Montenaro Aff., Ex. C.) Nevertheless, Plaintiff was on notice a year prior to filing the lawsuit that Defendant had a permissible purpose in accessing her credit report notwithstanding the fact that she erroneously contended the debt collection exception does not apply to credit card accounts. Bad faith may be inferred from these facts because Plaintiff had prior notice of a permissible purpose and chose to ignore it. See Dabney v. Gerald E. Moore & Assocs., Civil Action No. 4:11-156-HLM, Doc. No. 24 (N.D. Ga. Dec. 19, 2011) (awarding attorney's fees against Plaintiff under § 1681n(c) on substantially similar facts).

There are also other circumstances concerning Plaintiff's filing of the instant case that the Court finds probative on the issue of bad faith. At the time of filing, Plaintiff had already filed eight prior cases in this division against various debt collectors asserting the same cause of action.[6] In every case, the United States Magistrate Judge issued a Report and Recommendation in which he discusses the

---

[6] In order of filing, the cases are: Hinkle v. AFNI, Inc., 3:11-cv-057, Doc. No. 4, at 4 (S.D. Ga. June 16, 2011); Hinkle v. ARS National Servs., Inc., 3:11-cv-058 (S.D. Ga. June 16, 2011); Hinkle v. NCO Fin. Sys., Inc., 3:11-cv-059 (S.D. Ga. June 16, 2011); Hinkle v. Northland Group, 3:11-cv-063 (S.D. Ga. June 24, 2011); Hinkle v. Financial Recovery Servs., 3:11-cv-064 (S.D. Ga. June 24, 2011); Hinkle v. CBE Group, 3:11-cv-065 (S.D. Ga. June 24, 2011); Hinkle v. Northland Group, Inc., 3:11-cv-084 (S.D. Ga. Sept. 7, 2011); Hinkle v. CBE Group, 3:11-cv-091 (S.D. Ga. Oct. 5, 2011).

permissible purpose of debt collection and recommends that the case be dismissed.[7]   The statutory provisions that govern Plaintiff's claim are "clear and easily applied."  Id., Doc. No. 24, at 27.  The law was explained to Plaintiff not only by Defendant in May 2011 but by this federal court in no uncertain terms time and again.

Further, the Court notes that Plaintiff had managed to settle four out of ten consumer credit cases that she has filed in this district between August 2011 and July 2012.[8]  In her e-mail of May 20, 2011, to Defendant herein, Plaintiff suggests a "reasonable resolution" of the matter because Defendant's "litigation costs alone would most likely exceed the amount of my proposed settlement with you."  (See Montenaro Aff., Ex. C.)  Then, by letter of May 31, 2011, entitled "Notice of Pending Lawsuit," Plaintiff demands a settlement of $1000.  (Id.)  Yet, she waits over a year to file suit, and only after she became accustomed to having her claims settled.

---

[7]   For instance, the Reports and Recommendations state: "If a collection agency is retained by a creditor to collect a debt owed by a consumer, then it typically has a permissible purpose for obtaining a consumer report in conjunction with its collection activities . . . ."  See, e.g., Hinkle, 3:11-cv-059, Doc. No. 4, at 4.

[8]   In addition to the eight previously cited cases, Plaintiff also filed the following cases:  Hinkle v. Pinnacle Fin. Group, 3:11-cv-092 (S.D. Ga. Oct. 5, 2011); Hinkle v. Plaza Assocs., 3:11-cv-100 (S.D. Ga. Nov. 3, 2011).  These two cases, plus two of the previously listed cases, have been dismissed pursuant to settlement.

Given these circumstances, the Court easily concludes that the instant lawsuit was filed in bad faith and for the purpose of harassment.  Plaintiff understood more than a year prior to the filing that it is permissible for a debt collector to access her consumer report to collect on her credit card debt.  Yet, she chose to ignore the law in an effort to extract a settlement from Defendant.

B.   Amount of Attorney's Fees to be Awarded

Having made the requisite finding of bad faith, the next task before the Court is the determination of the amount of attorney's fees to be awarded.  This task is accomplished by multiplying the number of hours reasonably expended by a reasonable billing rate.  The product of that calculation is called the "lodestar."  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 563 (1986).

1.   "Work Expended"

In this case, Defendant seeks to recover for every hour he expended in the matter.  The Supreme Court, however, has advised that an attorney's work is compensable if it was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Del Valley, 478 U.S. at 561 (citations omitted).  Further, § 1681n(c) expressly provides that an award of attorney's fees is warranted only "in relation to the work expended in responding" to the pleading or motion filed in bad faith - here, the complaint.  Thus, the Court must look at the entirety of the litigation

15

and its result and must exclude hours that are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1989).  Moreover, under § 1681n(c), the Court must ensure that the expended hours are responsive to the filing of the complaint.

The problem in this case is that Defendant should have recognized that a motion for summary judgment was the proper vehicle through which to show its permissible purpose defense because it necessarily had to rely upon matters outside the pleadings.  There certainly would have been no downside to filing a motion for summary judgment in the first instance rather than the motions to dismiss.  That is to say, this litigation was unnecessarily prolonged by the fact that the Court had to convert the motions to dismiss into a motion for summary judgment.

Fortunately, the billing records attached to Mr. Aust's affidavit are more than adequate to determine which of his expended hours should be compensated.  The Court first reviewed the amount of time spent in the case and hereby finds that the time claimed is reasonable.  Thereafter, the Court reviewed each individual entry and asked whether the task was necessary to respond to Plaintiff's filing of the complaint. In general, defense counsel's time entries relate to research on service of process issues or permissible purposes under the FCRA, the conduct of discovery or the Rule 26(f) conference,

16

drafting and filing motions to dismiss, drafting and filing
the motion for summary judgment of January 24, 2013, and
memoranda and telephone conference calls with his client in
relation to this work.  For purposes of the attorney's fees
award, the Court focused on the entries that involved (1) the
filing of the motion for summary judgment and any attendant
research, memoranda and telephone conference calls with his
client regarding the same, and (2) the conduct of discovery or
the Rule 26(f) conference and the memoranda and telephone
conference calls with his client regarding the same.  The
Court specifically excluded the entries related to
researching, drafting, and filing the first two motions to
dismiss.

After performing this review, the Court has determined
that of the 46.40 hours claimed, only 28.3 hours were
*necessarily* expended in responding to the filing of the
complaint.

2.   *Reasonable Hourly Rate*

A reasonable rate is "the prevailing market rate in the
relevant legal community for similar services by lawyers of
reasonably comparable skills, experience, and reputation."
Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th
Cir. 1988).  The relevant community in this case is Dublin,
Georgia.

Mr. Aust, who has been in practice for nearly four years,

17

submits that he should be compensated at a rate of $195 per hour. Given the Court's familiarity with the prevailing market rate in the Dublin Division, this hourly rate is reasonable.

### V.   CONCLUSION

Upon the foregoing, Defendant has established a defense to Plaintiff's claim that it impermissibly obtained her credit report in violation of the FCRA. Plaintiff has not presented any evidence that shows the existence of any disputed material fact related to Defendant's established permissible purpose. Accordingly, Defendant's motion for summary judgment (doc. no. 29) is **GRANTED.**

Moreover, Defendant has established that Plaintiff's complaint was filed in bad faith, and thus, an award of attorney's fees is appropriate. The Court hereby awards an attorney's fees in the amount of $5,518.50, which is the product of 28.3 hours at a rate of $195.00 per hour.

The Clerk is directed to **CLOSE** this case and **ENTER JUDGMENT** in favor of Defendant in the amount of $5,518.50.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of May, 2013.

UNITED STATES DISTRICT JUDGE

18